DAYTON HUDSON CORPORATION AND SUBSIDIARIES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21217–91.     Filed November 18, 1993.

*David R. Brennan, John K. Steffen,* and *Walter A. Pickhardt,* for petitioner.

*John C. Schmittdiel,* for respondent.

OPINION

HALPERN, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for the year ended January 28, 1984, based upon her determination that petitioner improperly computed ending inventory. Respondent moves for summary judgment that section 1.471-2(d), Income Tax Regs. (the regulation), prohibits certain adjustments to ending inventory made by petitioner. Specifically, respondent argues that the regulation prohibits petitioner from estimating shrinkage in computing its ending inventory.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

At the time the petition herein was filed, petitioner's principal place of business was Minneapolis, Minnesota. Petitioner, a publicly held corporation, engaged primarily in the retail sales business through various divisions and subsidiaries. Petitioner kept its inventory account in accordance with a perpetual inventory system. Under that system, the inventory account was increased by the cost of goods purchased and decreased by the cost of goods sold.

With few or no exceptions, petitioner conducted a physical inventory of each of its stores once a year, but not at year-end. Those physical inventories generally revealed a discrepancy between the inventory indicated by the perpetual inven-

tory records and the inventory actually on hand, the latter being lesser than the former. The term "shrinkage" is used to describe that discrepancy. Shrinkage is attributable primarily to employee and customer theft, damage, and bookkeeping errors. Petitioner included in cost of goods sold the shrinkage verified by physical inventories during the year.[1] Petitioner also included in cost of goods sold an estimate of shrinkage believed to occur subsequent to the physical inventories and prior to yearend. Petitioner based its shrinkage estimate on records of verified shrinkage in prior years and other information.

## Discussion

### I. Summary Judgment

A summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). However, genuine factual disputes may not be resolved in such proceedings. E.g., *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982). The party moving for summary judgment must demonstrate the absence of a genuine dispute as to any material fact. E.g., *id.* Nevertheless, to defeat a motion for summary judgment, the opposing party must do more than merely allege or deny facts in its pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d).

### II. Statute and Regulations

Section 471(a) provides generally that

SEC. 471(a). GENERAL RULE.—Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

---

[1] That adjustment resulted in a lesser ending inventory, and lower taxable income, than otherwise would have been obtained.

As the regulations point out, section 471 obviously establishes two distinct tests to which an inventory must conform:

(1) It must conform as nearly as may be to the best accounting practice in the trade or business, and
(2) It must clearly reflect the income.
[Sec. 1.471-2(a), Income Tax Regs.]

In accordance with the authority provided by section 471(a), the Secretary has promulgated rules for taxpayers maintaining a perpetual (book entry) system of keeping inventories. In pertinent part, section 1.471-(2)(d), Income Tax Regs. (the regulation), reads as follows:

Where the taxpayer maintains book inventories in accordance with a sound accounting system in which the respective inventory accounts are charged with the actual cost of the goods purchased or produced and credited with the value of goods used, transferred, or sold, calculated upon the basis of the actual cost of the goods acquired during the taxable year * * *, the net value as shown by such inventory accounts will be deemed to be the cost of the goods on hand. The balances shown by such book inventories should be verified by physical inventories at reasonable intervals and adjusted to conform therewith.

III. *Respondent's Argument*

Respondent concedes that (1) the first prong of the statutory test is satisfied, in that petitioner's inventory method conforms to the best accounting practice in its trade or business, and (2) "The regulatory scheme does not deny the taxpayer a reduction for shrinkage." Respondent's argument is focused on the regulation and the second prong of the statutory test: "Petitioner's method of estimation [of shrinkage] is not in accord with Treas. Reg. 1.471-2(d); therefore, *petitioner's estimation method does not clearly reflect income.*" (Emphasis added.) Respondent's argument is concisely stated: "Absent a physical inventory, the taxpayer is not entitled to an adjustment for shrinkage." Respondent's interpretation of the regulation is as follows:

Even though the regulation deems the book inventory balance to be the cost of inventory on hand, Treas. Reg. § 1.471-2(d) recognizes that differences arise between the book inventory account and the physical inventory. Consequently, the regulation requires that a taxpayer verify the book inventory by physically counting its inventory at reasonable intervals and adjusting the book inventory to conform to the physical count. A physical count is necessary because it is the only way to determine and adjust for

certain items, such as undetected theft, breakage, and bookkeeping errors, which can only be quantified if the taxpayer actually counts its inventory. In the absence of a physical count, the regulation permits no other adjustments to the book inventory. Petitioner's claim that its method of estimating shrinkage on its books is in compliance with Treas. Reg. § 1.471-2(d) is therefore not supportable.

There can be no mistake that respondent would allow an adjustment for estimated shrinkage *only* upon the occasion of a physical inventory:

At the time that book inventory is verified and reconciled with a physical count, petitioner is entitled to either an increase or decrease in its cost of goods sold [for shrinkage]. Until that time, Treas. Reg. § 1.471-2(d) does not permit additional adjustments.

## IV. *Petitioner's Argument*

Petitioner argues that the regulation does not forbid it to reduce closing inventory by estimated shrinkage.[2] Thus, petitioner continues, whether its accounting method clearly reflects income is a factual question about which there is a genuine dispute, and such question may not be resolved at the summary judgment stage. See Rule 121.

## V. *Analysis*

Respondent has raised a question of clear reflection of income. The question is one of fact, *Hamilton Indus., Inc. v. Commissioner*, 97 T.C. 120, 128 (1991), which, therefore, generally is not susceptible to summary judgment. Nevertheless, respondent maintains that, in light of the regulation, it is sufficient that petitioner has failed to take a physical inventory at yearend, relying, instead, on an estimate of shrinkage occurring since petitioner's last physical inventory. Thus, according to respondent, in the absence of a yearend physical inventory, we may, as a matter of summary judgment, rule that a yearend adjustment to book inventory for estimated shrinkage occurring since the last physical inventory must be foregone.

There is no dispute, and we agree, that a downward adjustment of inventory is the proper way to account for

---

[2] Petitioner does not challenge the validity of the regulation. Moreover, it is well established that respondent has broad discretion to promulgate regulations determining that an inventory accounting method fails to clearly reflect income. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532 (1979). Accordingly, petitioner appears to concede that, if respondent's interpretation of the regulation is correct, summary judgment is appropriate.

what has been here termed shrinkage. *National Home Prods., Inc. v. Commissioner,* 71 T.C. 501, 529 (1979). Moreover, we agree with respondent that, pursuant to the regulation, petitioner must verify its book inventories by conducting physical inventories at "reasonable intervals". We do not, however, agree that, if a taxpayer maintaining a book inventory wishes its yearend inventory to include the year's shrinkage, the only reasonable interval must be one with a conclusion at yearend. First, the regulation simply does not say so. Second, the history of the regulation (sometimes referred to as the present regulation) confirms that it was not intended to have that meaning. The 1921 regulations explicitly required that physical inventories be taken at yearend. Regs. 45, art. 1588(3)(B) (1921) ("Physical inventories by departments are taken of goods on hand at retail at the close of the taxable year, and the retail value of the book inventory of goods on hand is adjusted accordingly."). However, the 1922 regulations removed that restriction, providing that physical inventories need not be performed at yearend, but only at "reasonable intervals". Regs. 45, art. 1582 (1922) ("The balances shown by such book inventories should be verified by physical inventories at reasonable intervals and adjusted to conform therewith."). We do not believe the Secretary removed the clear requirement of a yearend physical inventory only to replace it with an ambiguous requirement meaning precisely the same thing. Rather, we think that the change was intended to make more lenient the physical-inventory requirement. Like the 1922 regulation, the present regulation requires physical inventories only at reasonable intervals. Therefore, we disagree with respondent's contention that yearend physical inventories are required to verify a yearend book entry balance including an estimate for shrinkage.

We also disagree with respondent's contention that a physical count is the "only way" to adjust for items such as theft, breakage, and bookkeeping errors (shrinkage). Respondent points to no words in the regulation that so provide. Moreover, the regulation appears to permit *any means* of adjusting book inventories for shrinkage, so long as (1) such book inventories are maintained in accordance with a sound accounting system, (2) such system values goods at actual cost, and (3) book inventories are verified by physical inven-

tories at reasonable intervals. Given that the *valuation* of goods is not at issue,[3] and that we deal with the reasonable-intervals question above, the only argument remaining to respondent is that shrinkage estimates are inconsistent with a "sound accounting system" (with which book inventories must be kept). However, the regulation does not define "sound accounting system", and respondent has given us no reason to believe that term excludes all shrinkage estimates.

Respondent also contends that petitioner's "adjustment for estimated shrinkage without verification by physical inventory is a deduction for a 'reserve'." Thus, respondent continues, because reserves generally may not be deducted from gross income, see *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 543-544 (1979), and no specific exception applies here, the adjustment is improper. We disagree. A reserve is commonly understood as a fund set aside to cover *future* expenses, losses, claims, or liabilities. Black's Law Dictionary 1307 (6th ed. 1990). In contrast, petitioner's adjustment for estimated shrinkage is intended only to deduct a loss that *already* has occurred; it thus does not fit the common definition of a reserve. Moreover, the regulation clearly allows the maintenance of book inventories and, as we have shown, is not on its face hostile to *any* adjustment for estimated shrinkage. The situation here is distinguishable from that in *Thor Power Tool Co.,* which involved the write-down in value of "excess" inventory (which the Supreme Court likened to "a current 'deduction' for an estimated future loss", *id.* at 542), and in which the Supreme Court stated that such write-down "was plainly inconsistent with the Regulations". *Id.* at 538. Accordingly, the general unavailability of a deduction for reserves is inapposite.

In light of the foregoing, we are unable to grant respondent a summary judgment that the regulation forbids the use of all shrinkage estimates. Of course, respondent may yet argue that petitioner's accounting method, including the use of its shrinkage estimate, is not "sound", within the meaning of the regulation, or fails to clearly reflect income, as required by section 446(b) and section 1.471-2(a)(2), Income Tax Regs.

---

[3] The parties dispute only the *number* of goods that have been lost due to shrinkage; the value of each such good is not in dispute.

However, those questions are in genuine dispute and cannot be resolved at the summary judgment stage. See Rule 121.

*An order denying respondent's motion for summary judgment will be issued.*

Reviewed by the Court.

HAMBLEN, SHIELDS, COHEN, SWIFT, PARR, WELLS, RUWE, WHALEN, and LARO, *JJ.*, agree with the majority opinion.

CHIECHI, *J.*, concurs in the result only.

COLVIN, *J.*, dissents.

---

JACOBS, *J.*, concurring: Because the question involved herein (whether the taxpayer properly computed its ending inventory) is a question of fact, the granting of the Commissioner's motion for summary judgment is inappropriate. As a practical matter, however, I have difficulty in believing the taxpayer can prove that the shrinkage for any given year can be estimated with sufficient accuracy so as to "clearly reflect" the taxpayer's ending inventory, and hence its income, as is necessary to comport with the requirements of section 471. But, the taxpayer should have an opportunity to present facts proving otherwise.

Because my ultimate conclusion is the same as that of the majority, I concur in the result even though I do not join in the majority's opinion.

---

GERBER, *J.*, dissenting: I respectfully disagree with the majority's holding that section 1.471-2(d), Income Tax Regs., permits taxpayers to use estimates in accounting for inventories. The majority has interpreted the regulation in a manner which would permit any approach to computing inventory which is not expressly prohibited. This interpretation conflicts with the express terms, internal consistency, and precedent that strictly construe inventory accounting methods in order to curb abuse.[1]

---

[1] The majority is correct in its holding that this is a proper matter for summary judgment. If, as a matter of law, the regulation prohibits estimates, it would be unnecessary to determine factually whether the use of estimates clearly reflects income. The focus of this inquiry, accord-

*Section 1.471-2(d), Income Tax Regs*

The regulation provides taxpayers with an alternative to yearend physical inventories. The regulation is self-contained and describes a specific method under which the inventory account is "charged with the actual cost of goods purchased or produced and credited with the value of goods used, transferred, or sold". Sec. 1.471-2(d), Income Tax Regs. Increases and reductions to the inventory are to be based on "actual cost". It also provides that taxpayers should verify their inventory accounts with "physical inventories at reasonable intervals" and adjust the accounts to conform with the physical inventory. It should be noted that a physical inventory may reflect an actual inventory on hand which is larger or smaller than the one calculated by the book or regulatory method. Accordingly, although the regulation provides an alternative to physical counts of inventory, it contains recognition of the need to periodically take a physical inventory to determine any differences (i.e., shrinkage) between the ending balance under the regulatory method and a physical count.

The majority reasons that the regulation does not expressly prohibit taxpayers from estimating shrinkage and that, therefore, estimates are permissible. If this theory is correct, then taxpayers also can estimate their purchases and sales, because the regulation does not expressly prohibit such a practice. Interpreting the regulation in that manner simply does not make sense. Furthermore, in the abstract, it seems highly unlikely that an estimate of shrinkage will result in a clearer income reflection than a physical inventory or actual knowledge of the missing items.

*Case Precedent Regarding Inventories*

Petitioner's use of estimates is conceptually synonymous with a prediction made without the benefit of actual knowledge of whether inventory is missing. Petitioner's estimate with respect to the amount of inventory on hand is based on historical data, similar to the taxpayer's approach in *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522 (1979), where

---

ingly, does not depend upon the facts surrounding this petitioner's estimates. Instead, we must consider whether any taxpayer, subject to the regulation under consideration, may estimate. If estimates are permitted, then a clear reflection factual inquiry may be necessary.

the value of inventory items was estimated; an estimate which the Supreme Court did not allow.

In *Thor Power Tool,* the taxpayer reduced its inventory account to reflect a lower net realizable value for excess inventory on hand. *Id.* at 527. The taxpayer did not scrap the excess inventory or offer it for sale at the reduced value. *Id.* at 529. Instead, the excess inventory was held for sale at the original prices. *Id.* The Court held that the taxpayer's inventory accounting method did not clearly reflect income for tax purposes because it violated the regulations under consideration in that case. *Id.* at 535; see secs. 1.471-2(c), 1.471-4(b), Income Tax Regs.

Total inventory value is composed of two components—number of items and value or cost. Multiplying the number of items in inventory by the value or cost of that item results in the composite concept of inventory—total inventory. The Supreme Court in *Thor Power Tool Co. v. Commissioner, supra,* would not allow the taxpayer to write down the cost or value factor of the inventory equation based on historical data. The Court stated that "If a taxpayer could write down its inventories on the basis of management's subjective estimates of the goods' ultimate salability, the taxpayer would be able * * * 'to determine how much tax it wanted to pay for a given year.'" *Id.* at 536 (quoting *Thor Power Tool Co. v. Commissioner,* 64 T.C. 154, 170 (1975)). Despite this, the majority would allow taxpayers to estimate the item component of the same basic inventory equation.

The majority attempts to distinguish *Thor Power Tool Co. v. Commissioner, supra,* based on the fact that the *Thor* taxpayer violated specific regulatory language. See secs. 1.471-2(c), 1.471-4(b), Income Tax Regs.[2] However, the majority does not distinguish the principle and rationale expressed in the holding of *Thor Power Tool.* The Supreme Court's approach and rationale in the inventory area conservatively favored respondent's regulatory attempts to discourage abuse. The majority's holding in this case flies in the face of this approach.

---

[2] We note that the majority interpretation would permit taxpayers to estimate even though sec. 1.471-2(d), Income Tax Regs., requires actual cost and permits reduction only for "goods used, transferred, or sold"—events which in this case have not been determined to have occurred.

The majority attempts to further distinguish *Thor Power Tool Co. v. Commissioner, supra,* by reasoning that the *Thor* taxpayer was taking a current deduction for an estimated future loss, and in the present case petitioner is estimating a deduction for a current, not a future, loss. Such a distinction is illusory. Both the *Thor* taxpayer and petitioner wrote down their *current* total inventory to what they thought was the correct yearend balance. The *Thor* taxpayer made the adjustment by estimating value, and petitioner here made the adjustment by estimating the number of items in inventory.[3] The deduction in both cases is a *current* adjustment to total inventory. The majority's approach makes it possible for taxpayers to make such an adjustment by estimating one component of the equation, after the Supreme Court has prohibited taxpayers from estimating the other.

*The Regulation Permits Adjustment for Any Verified or Detected Shrinkage of Inventory*

Physical inventories are the most accurate method to account for shrinkage. Therefore, the regulation provides for physical inventories at reasonable intervals as a way to insure that shrinkage is accurately reflected. Conceptually, section 1.471-2(d), Income Tax Regs., anticipates a difference between book inventory and actual inventory on hand due to shrinkage, and requires taxpayers to adjust them accordingly. However, the regulation does not allow for such an adjustment before acquiring actual knowledge *or* before a physical count is taken.

The majority appears to believe that, under respondent's interpretation, taxpayers would have to take a yearend physical count in order to get a year's worth of shrinkage and taxpayers can only deduct shrinkage when physical inventories are taken. This interpretation is not correct. The regulation does not require, nor is respondent advocating, that a physical inventory be taken at yearend. Instead, under respondent's interpretation, the regulation does not permit a deduction for the anticipated results of a yearend physical inven-

---

[3] In this case petitioner used a flat percentage markup to increase cost of goods sold. As an example, each time a single item was sold by one of petitioner's retail outlets, the cost of goods sold was increased by 102 percent of "actual cost". The percent above 100 percent (which may vary in amount) is an estimate of the possibility that the physical inventory, when taken, may be short.

tory when taxpayers choose not to take one. Furthermore, respondent's interpretation does allow for a deduction without a physical inventory for any detected or verified shrinkage. If shrinkage was physically observed, there would be "goods used, transferred, or sold", and a reduction of book inventory would be permissible under section 1.471-2(d), Income Tax Regs. This is so because the reduction for shrinkage would be based on verification as opposed to a mere probability.

*The Issue Here Is Essentially a Matter of Timing and No Tax Benefit Is Lost*

The majority seems to miss the point that the issue here is essentially a matter of timing. If a taxpayer does not take a yearend physical inventory, then the deduction for shrinkage is deferred until the physical inventory is taken. As long as a physical inventory is taken every 12 months, then a taxpayer will be allowed a deduction for a full year's shrinkage. The regulation gives taxpayers a choice of either taking a yearend physical inventory *or* using the method described in the regulation. Petitioner seeks to have the benefit of both methods by not taking a physical inventory at yearend but taking a deduction as if it did.[4]

*Estimates for Shrinkage Are Essentially Prohibited Reserves*

The majority further states that petitioner's estimate for shrinkage is not a reserve. A reserve is an account for an estimated expense which is attributable to the current taxable year but will not be recognized until a subsequent taxable year. Sec. 462 (repealed 1955). Accordingly, this Court in *Altec Corp. v. Commissioner,* T.C. Memo. 1977-438, characterized shrinkage estimates as a reserve. Former section 462 (repealed 1955) allowed taxpayers to deduct increases in reserves for certain estimated expenses. This section was repealed, and the law is well settled that only a few reserves acceptable in financial accounting are author-

---

[4] It should be noted that petitioner here did take annual physical inventories even though the regulation does not require an annual physical count. Because the regulation states that a taxpayer should take a physical inventory at "reasonable intervals", under the majority's approach taxpayers could estimate the amount of their shrinkage for several taxable periods. This would create additional potential for the type of abuse envisioned by the Supreme Court in *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522 (1979).

ized by the revenue acts. *Thor Power Tool Co. v. Commissioner, supra* at 543-544 (citing *Brown v. Helvering,* 291 U.S. 193, 201-202 (1934)). An estimate for inventory shrinkage is a reserve; however, it is not the type of reserve expressly authorized by the revenue acts and is, therefore, not deductible.

For the reasons expressed, I respectfully dissent.

PARKER, WRIGHT, and BEGHE, *JJ.,* agree with this dissenting opinion.