**MAXXAM GROUP INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. H–94–3847.**

United States District Court,
S.D. Texas.

Sept. 7, 1995.

Thomas M. Farrell, Solace Kirkland, Mayor, Day, Caldwell & Keeton, L.L.P., Houston, TX, Alan R. Friedman, Steven C. Todrys, Alvin D. Knott Kramer, Levin, Naftalis, Neaser, Kamin & Frankel, New York City, for plaintiff.

Manuel P. Lena, Jr., Dallas, TX, for defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Plaintiff MAXXAM Group, Inc.'s ("MGI") Motion for Partial Summary Judgment (# 5). MGI seeks partial summary judgment against the United States of America on behalf of the Internal Revenue Service ("IRS") on its claim that it appropriately applied single-item treatment to inventory acquired in a stock purchase and its replacement inventory.

Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that the plaintiff's motion for partial summary judgment must be denied.

### I. Background.

On February 26, 1986, MGI, a Delaware corporation with its principal place of business located in Houston, Texas, completed a leveraged buyout in which it paid $912,831,-000 for all of the stock of the Pacific Lumber Company ("Old PLC"), a Maine corporation engaged in the timber and lumber business. MGI elected to treat the stock purchase of Old PLC as an asset purchased under 26 U.S.C. § 338 of the Internal Revenue Code ("the Code"), which deemed it a purchase of all of Old PLC's assets as of February 26, 1986, at fair market value in a single transaction. On February 27, 1986, Old PLC's successor, Pacific Lumber Company–Delaware ("New PLC") commenced operations.

This election under 26 U.S.C. § 338 required MGI to allocate the stock purchase price of $912,831,000 among the assets it had acquired in proportion to those assets' relative fair market value. According to MGI, the appraised fair market value of all the assets acquired in the purchase was $2,070,-388,000. While MGI asserts that the acquired inventory of logs and lumber was appraised at $68,338,000, the IRS contends that the inventory of logs and lumber was never actually appraised. According to MGI, the portion of the purchase price allocated to

the inventory of logs and lumber was $29,-916,000 (the IRS fixes this figure at $29,964,-000), which was treated as the beginning inventory for New PLC on February 27, 1986.

Upon acquiring PLC, MGI elected to use the dollar-value "last-in, first-out" ("LIFO") method to account for its inventory of logs and lumber. Furthermore, rather than treat PLC's inventory of logs and lumber and the replacement inventory as two separate items of inventory under LIFO, MGI combined the two inventories for single-item treatment.

On September 15, 1988, MGI filed a federal income tax return with the IRS Center in Fresno, California, for the 1987 calendar year, paying $8,566,696 in taxes. MGI later filed an application with the IRS–Fresno for and received a refund of $1,635,190 for the 1987 calendar year. In auditing MGI's tax return, however, the IRS determined that MGI's method of accounting for its inventory did not clearly reflect its income. Therefore, the IRS adjusted PLC's inventory records for 1986 and 1987 so that the inventory from the purchase of PLC would be treated as a separate item from the replacement inventory under LIFO, and thus, clearly reflect MGI's income. As a result, on July 31, 1992, the IRS–Fresno assessed a deficiency of $2,800,094 in additional taxes and $1,373,341 in interest against MGI. On August 18, 1992, MGI paid a total of $4,173,435, which included $2,800,094 for the full amount of the deficiency and $1,373,341 in interest. Also on September 3, 1993, MGI paid the IRS Center in Austin, Texas, additional interest of $21,854 for 1987. MGI filed a claim for a refund of $3,023,782 plus interest with the IRS–Fresno on January 6, 1993.

MGI initiated this action on November 10, 1994, seeking a refund of the income tax deficiency and interest assessed against it and paid for calendar year 1987. On February 27, 1995, MGI filed the instant motion for partial summary judgment requesting the court to declare that MGI appropriately treated the inventory it had acquired from PLC as the same item as subsequently manufactured replacement inventory under LIFO.

## II. *Analysis.*

### A. *The Applicable Standard for Summary Judgment.*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2515; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

### B. *Clear Reflection of Income.*

In accordance with 26 U.S.C. § 446, a taxpayer shall compute taxable income "under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books," except that, "if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect

income." 26 U.S.C. § 446(a), (b). Although taxpayers are free to adopt those accounting methods that are best suited to their needs, no method is acceptable unless, in the opinion of the Commissioner, it clearly reflects the taxpayer's income. 26 C.F.R. § 1.446–1(a)(2). Similarly, 26 U.S.C. § 471, governing inventory accounting, provides that a taxpayer may only use a method for valuing inventory which "conform[s] as nearly as may be to the best accounting practice in the trade or business and as most clearly reflect[s] the income." The federal regulation addressing valuation of inventories, 26 C.F.R. § 1.471–2(a), states in part:

> (a) Section 471 provides two tests to which each inventory must conform:
>
> (1) It must conform as nearly as may be to the best accounting practice in the trade or business, and
>
> (2) It must clearly reflect the income.

■■■ Under both §§ 446(b) and 471 of the Code, the Commissioner has broad discretion in determining whether a taxpayer's chosen accounting method clearly reflects income. *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 532, 99 S.Ct. 773, 781, 58 L.Ed.2d 785 (1979); *Commissioner v. Hansen,* 360 U.S. 446, 467, 79 S.Ct. 1270, 1281, 3 L.Ed.2d 1360 (1959); *St. James Sugar Coop., Inc. v. United States,* 643 F.2d 1219, 1222–23 (5th Cir. [Unit A] 1981); *Apollo Computer, Inc. v. United States,* 32 Fed.Cl. 334, 347 (1994). Even though an accounting method may be in accordance with generally accepted accounting principles ("GAAP"), the requirement that the accounting method clearly reflect income is paramount. *Thor Power Tool Co.,* 439 U.S. at 538–44, 99 S.Ct. at 784–87; *Peninsula Steel Prods. v. Commissioner,* 78 T.C. 1029, 1044, 1982 WL 11111 (1982). If a taxpayer's accounting method does not clearly or accurately reflect his income, the Commissioner may determine the taxpayer's income under a method that does clearly reflect income. 26 U.S.C. § 446(b); 26 U.S.C. § 471; *Page v. Commissioner,* 58 F.3d 1342, 1347 (8th Cir.1995); *Caulfield v. Commissioner,* 33 F.3d 991, 992 (8th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1358, 131 L.Ed.2d 216 (1995); *Prabel v. Commissioner,* 882 F.2d 820, 823 (3d Cir.1989).

The Commissioner's discretion, however, is not "unbridled and may not be arbitrary." *Thor Power Tool Co.,* 439 U.S. at 532–33, 99 S.Ct. at 781–82; *see also Loftin & Woodard, Inc. v. United States,* 577 F.2d 1206, 1229 (5th Cir.1978).

According to the IRS, the court must review the Commissioner's determination that the taxpayer's method of accounting does not clearly reflect income under an abuse of discretion standard, giving great deference to the Commissioner's determination. *See Ralston Dev. Corp. v. United States,* 937 F.2d 510, 513 (10th Cir.1991); *American Fletcher Corp. v. United States,* 832 F.2d 436, 438 (7th Cir.1987); *Ansley–Sheppard–Burgess Co. v. Commissioner,* 104 T.C. 367, Tax Ct.Rep. (CCH) ¶ 50,547, at 4095, 1995 WL 131530 (Mar. 28, 1995); *Ford Motor Co. v. Commissioner,* 102 T.C. 87, 92, 1994 WL 26305 (1994). The Commissioner's assessment of a tax deficiency is normally entitled to a presumption of correctness. *See Page,* 58 F.3d at 1347; *Peninsula Steel Prods.,* 78 T.C. at 1044, 1982 WL 11111. Hence, according to the IRS, the Commissioner's determination of whether a taxpayer's chosen method of accounting clearly reflects income may not be set aside unless "clearly unlawful" or "plainly arbitrary." *See Thor Power Tool Co.,* 439 U.S. at 532–33, 99 S.Ct. at 781–82; *Lucas v. Kansas City Structural Steel Co.,* 281 U.S. 264, 271, 50 S.Ct. 263, 266, 74 L.Ed. 848 (1930); *Lucas v. American Code Co.,* 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538 (1930); *American Fletcher Corp.,* 832 F.2d at 438; *Apollo Computer, Inc.,* 32 Fed.Cl. at 347. Under the abuse of discretion standard, in order for the taxpayer to prevail, he must prove that the Commissioner's determination is arbitrary and capricious and without sound basis in fact or law. *Ansley–Sheppard–Burgess Co.,* Tax Ct.Rep. (CCH) ¶ 50,547, at 4095, 1995 WL 131530; *Ford Motor Co.,* 102 T.C. at 92, 1994 WL 26305; *Molsen v. Commissioner,* 85 T.C. 485, 498, 1985 WL 15394 (1985).

MGI contends, however, that the abuse of discretion standard does not apply to the issue of whether the accounting method used by the taxpayer clearly reflects income. Instead, according to MGI, it is a threshold

issue that must be reviewed *de novo* by the court, in which the Commissioner's determination is accorded no deference. *See Mulholland v. United States*, 28 Fed.Cl. 320, 334–35 (1993), *aff'd*, 22 F.3d 1105 (Fed.Cir. 1995); *see also St. James Sugar Coop., Inc.*, 643 F.2d at 1225. MGI also points out that the Commissioner cannot require a taxpayer to change from an accounting method that clearly reflects its income to an alternative method of accounting merely because the Commissioner is of the opinion that the alternative method more clearly reflects the taxpayer's income. *Ansley–Sheppard–Burgess Co.*, Tax Ct.Rep. (CCH) ¶ 50,547, at 4094–95, 1995 WL 131530; *Rotolo v. Commissioner*, 88 T.C. 1500, 1514, 1987 WL 31362 (1987); *Molsen*, 85 T.C. at 498, 1985 WL 15394; *Bay State Gas Co. v. Commissioner*, 75 T.C. 410, 417, 1980 WL 4536 (1980), *aff'd*, 689 F.2d 1 (1st Cir.1982); *Auburn Packing Co. v. Commissioner*, 60 T.C. 794, 800, 1973 WL 2550 (1973); *Garth v. Commissioner*, 56 T.C. 610, 618, 1971 WL 2447 (1971); *see also St. James Sugar Coop., Inc.*, 643 F.2d at 1225. Therefore, if the taxpayer establishes that its method of accounting clearly reflects income, the Commissioner may not disturb the taxpayer's choice. *Hamilton Indus., Inc. v. Commissioner*, 97 T.C. 120, 128, 1991 WL 138574 (1991); *RECO Indus., Inc. v. Commissioner*, 83 T.C. 912, 920, 1984 WL 15638 (1984); *Peninsula Steel Prods.*, 78 T.C. at 1045, 1982 WL 11111; *see also Mulholland*, 28 Fed.Cl. at 335.

■ In any event, the issue of whether the taxpayer's chosen accounting method clearly reflects income is a question of fact that must be determined on a case-by-case basis. *St. James Sugar Coop., Inc.*, 643 F.2d at 1223; *Apollo Computer, Inc.*, 32 Fed.Cl. at 349; *Mulholland*, 28 Fed.Cl. at 333; *Ansley–Sheppard–Burgess Co.*, Tax Ct.Rep. (CCH) ¶ 50,547, at 4095, 1995 WL 131530; *Ford Motor Co.*, 102 T.C. at 91–92, 1994 WL 26305; *Dayton Hudson Corp. v. Commissioner*, 101 T.C. 462, 466, 1993 WL 473332 (1993); *Pacific Enters. v. Commissioner*, 101 T.C. 1, 13, 1993 WL 257152 (1993); *RLC Indus. Co. v. Commissioner*, 98 T.C. 457, 489, 1992 WL 80336 (1992), *aff'd*, 58 F.3d 413 (9th Cir.1995); *Lincoln Elec. Co. v. Commissioner*, 54 T.C. 926, 933, 1970 WL 2272

(1970), *aff'd*, 444 F.2d 491 (6th Cir.1971). Thus, the question of clear reflection of income is an issue that generally is not susceptible to summary judgment. *Dayton Hudson Corp.*, 101 T.C. at 466, 1993 WL 473332.

### C. Treatment of Inventory.

■ In the instant case, because, under the IRS' calculations, MGI allocated $29,964,000 to inventory and the inventory's fair market value was $68,338,000, the IRS claims that MGI acquired Old PLC's inventory at a 57% discount, thereby constituting a "bargain" purchase. The IRS further contends that MGI treated the "bargain" inventory as the base layer of the manufactured goods inventory pool and improperly treated the inventory purchased from Old PLC as the same item of inventory as subsequently manufactured replacement inventory.

The value of inventory is integral to a manufacturer's computation of its annual income, as the cost of inventory produced during the year is added to the year's beginning inventory and then the value of the inventory remaining at the end of the year is subtracted to arrive at the cost of goods sold during the year. Gross income is then determined by subtracting the cost of goods sold from the amount of sales. If the ending inventory amount is kept as low as possible, thereby making cost of goods sold as large as possible, taxable income is minimized. Under LIFO, goods purchased last are deemed to be the first goods sold and ending inventories are deemed to be composed of the earliest purchased goods.

MGI asserts that because the Old PLC inventory and the replacement inventory of logs and lumber are functionally and physically identical, they should be treated as the same item under LIFO. MGI notes that the tracing of specific goods is not required under LIFO and, indeed, the LIFO method was designed to make identification of specific items in inventory unnecessary. MGI points out that under guidelines issued by the American Institute of Certified Public Accountants, for purposes of GAAP, goods should be treated as a separate or new item only when they are not physically fungible;

cost differences alone do not justify separate treatment. MGI further asserts that the IRS is requiring it to assume that the "bargain" inventory, the earlier acquired inventory, was sold as soon as it became marketable, which is contrary to LIFO's theory of matching current costs against current revenues. As a result, the cost of goods sold is artificially low and taxable income is artificially high, not clearly reflecting income.

The IRS, on the other hand, maintains that it is not bound by the principles of GAAP in determining whether a taxpayer's method of accounting clearly reflects its income because, while GAAP applies in the context of financial accounting, it does not necessarily apply to tax accounting, especially in a scenario involving inventory valued below market, as in the instant case. According to the IRS, LIFO was developed to minimize the distorting effect of inflation on real profits, not to shelter real profits realized by the manufacturer from the sale of inventory purchased at a bargain cost. The IRS argues that as long as the volume of New PLC's inventory is maintained at the level of the "bargain" purchase in the base year 1986, then the first layer of ending inventory value remains at the bargain value for 1986 and every year thereafter. As a result, the IRS asserts, MGI is able to defer recognition of income from the subsequent sale of the "bargain" purchased inventory from Old PLC until liquidation. The IRS contends that requiring MGI to treat the "bargain" inventory as a separate item from the replacement inventory eliminates this deferment of taxes and, unlike MGI's method, clearly reflects income. In recalculating the tax due, the IRS assumed that half of the acquired inventory was sold in the 1986 taxable year and the remaining half was sold in 1987, resulting in a net increase in taxable income of $1,123,-000 for 1987.

In view of the conflicting factual issues and without regard to the disparate legal approaches, MGI has not established as a matter of law that its chosen accounting method clearly reflects its income for calendar year 1987. MGI, likewise, has not established that the IRS abused its discretion in determining that MGI's single-item accounting method did not clearly reflect its income and that separate-item treatment was required to clearly reflect income. Therefore, under either standard of review, MGI has not met its burden for prevailing on summary judgment.

### III. *Conclusion.*

Accordingly, MGI's motion for partial summary judgment seeking a declaration that MGI appropriately used same-item treatment for inventory acquired in its stock purchase of Old PLC and its subsequently acquired inventory is denied. There remain material facts in dispute, and MGI is not entitled to judgment as a matter of law.