FORD MOTOR COMPANY AND AFFILIATED COMPANIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14949–91.         Filed January 31, 1994.

John S. Nolan, Loren M. Opper, and Monika D. Hajek, for petitioners.

Reid M. Huey and Nancy B. Herbert, for respondent.

## OPINION

WELLS, *Judge*: Respondent determined a deficiency in petitioners' Federal income tax for the 1970 taxable year in the amount of $3,300,151. Petitioners are hereinafter collectively referred to as petitioner. The deficiency is based on respondent's disallowance of a portion of the deductions claimed by petitioner with respect to obligations it incurred under "structured settlements" it reached in 1980[1] with tort claimants.[2] Petitioner claims deductions for the accrual of the total future payments to the tort claimants under the structured settlements. Respondent determined that petitioner's accrual of such payments does not clearly reflect income. The issue we must decide is whether respondent's determination is an abuse of discretion. The parties also presented extensive arguments on the issue of whether the obligations for which petitioner claims deductions have met the all events test required by the regulations for the accrual of deductions. We do not address those arguments because of our holding below that respondent's determination was not an abuse of discretion, even if it is assumed that the all events test is met.

The parties submitted the instant case fully stipulated. At the time it filed the petition in the instant case, petitioner's

---

[1] Petitioner reported a net operating loss on its Federal income tax return for 1980, which it carried back to its 1970 taxable year pursuant to sec. 172(b)(1)(H), I.R.C. 1954.

[2] By amended petition, petitioner claims additional deductions with respect to such obligations totaling $13,840,705 for the 1980 taxable year. As petitioner had a net operating loss for the 1980 taxable year, such additional deductions would also be carried back to petitioner's 1970 taxable year. With the additional claimed deductions of $13,840,705, petitioner's total claimed deductions increase from $10,636,994 to $24,477,699. Consequently, petitioner claims it is entitled to a $6,776,669 refund for overpayment of tax for its 1970 taxable year.

principal place of business was Dearborn, Michigan. Petitioner is engaged in a number of businesses, including the manufacturing of automobiles. Petitioner maintains its books and records and files its income tax returns using the accrual method of accounting.

During 1980, petitioner entered into approximately 20 "structured settlement" agreements resolving various personal injury or accidental death claims. The claimants were persons and survivors of deceased persons (tort claimants) whose injuries or deaths were allegedly the result of motor vehicle accidents caused by defective vehicles manufactured by petitioner. The settlement agreements provide for payments totaling $24,477,699 to be paid out over various periods, the longest of which is 58 years. Petitioner purchased single premium annuity contracts from various insurance companies with respect to all structured settlements it executed with the tort claimants during 1980. The total cost of the premiums for the annuity contracts was $4,424,587.[3] The annuity contracts were structured so that yearly annuity payments to be received under the annuity contracts would equal the yearly amount of the deferred payments owed to the tort claimants under the structured settlement agreements. Some of the settlement agreements required petitioner to purchase annuities. None of the settlement agreements, however, released petitioner from liability with respect to the deferred payments. Petitioner remained the owner of all the annuity contracts, and, in the event the issuer defaulted, petitioner would be required to pay the remaining balance of the deferred payments owed to the tort claimants.

A stipulated summary of the structured settlements is attached to this opinion as appendix A. The summary shows that petitioner's obligations to the tort victims were of three general types under the structured settlements. "Type I settlements" provided for periodic payments to be made for a period certain. "Type II settlements" provided for periodic payments to be made for the duration of the claimant's life.

---

[3] Of the $24,477,699 in deductions claimed by petitioner in its amended petition, $20,053,312 in deductions remains in dispute. The amount remaining in dispute does not exactly comport with the cost of the premiums or the amount of the deductions allowed by respondent in her notice of deficiency. ($24,477,699–$20,053,312=$4,424,387). The parties provided no explanation for this discrepancy; however, as the difference is relatively minor, the Court accepts the parties' stipulation.

"Type III settlements" contain elements of both type I and II settlements by providing for periodic payments to be made for a period certain, and thereafter, for the duration of the claimant's life.

On its 1980 return, petitioner claimed deductions for the various types of settlements as follows:[4] Type I settlements—the total amount of the periodic payments; type II settlements—the amounts it actually paid during 1980; type III settlements—the total amount of payments for the period certain portion. In its amended petition, petitioner claims a deduction in 1980 for the total amounts paid or to be paid to the tort claimants under type I, type II, and type III settlement agreements. As a result, petitioner claims that the proper amount of the deduction taken in 1980 should be increased to $24,477,699 from $10,636,994. In the notice of deficiency, respondent allowed total deductions of $4,259,464.

The parties stipulated that the present value of petitioner's total future obligations to the tort claimants does not exceed the amounts petitioner paid for the annuity contracts. A stipulated summary is attached as appendix B, which outlines: (1) The amount of the deduction allowed in the notice of deficiency; (2) the amount of the deduction claimed by petitioner on its 1980 return; (3) the amount of petitioner's increased claim; and (4) the amount that remains in dispute.

For financial purposes, petitioner reported the structured settlements as follows: (a) Settlements for a period certain or for the remainder of the claimant's life, when funded by an annuity[5]—the cost of the annuity was expensed in the year of settlement; (b) settlements for the remainder of the claimant's life, when not funded by an annuity—the present value of the total payments for the projected life was expensed in the year of settlement; (c) settlements for a period certain, when not funded by an annuity—the present value of the total of the payments would be expensed in the year of settlement; (d) settlements not funded by annuities—the yearly

---

[4] One variation from the general pattern involved the "L settlement." See appendix A. With regard to the L settlement, petitioner claimed a deduction for tax purposes of less than one-half of the type I payments. With regard to the A and F settlements, petitioner claimed a $987,370 deduction on its 1979 income tax return. See appendix A. The parties have stipulated that those settlement agreements were executed in 1980 and that the $987,370 is not deductible in 1979.

[5] As stated above, all of the structured settlements into which petitioner entered during 1980, the year in issue in the instant case, were funded by annuities.

incremental change in the present value of the outstanding liability would be expensed each year as interest. For financial reporting purposes, petitioner did not create a reserve for amounts paid or projected to be paid to claimants under the 1980 structured settlement agreements.

We must decide whether respondent's determination is an abuse of discretion. Respondent's position is that petitioner's accrual does not clearly reflect income and that its deduction should be limited to the cost of the annuity contracts, an amount which does not exceed the present value of such future payments. Petitioner claims that it is entitled to accrue for tax purposes the total future payments under its obligations to the tort claimants. Essentially, respondent would limit petitioner's deduction to the amounts petitioner expensed on its books for financial purposes for the year in issue.

Section 446(b) [6] vests the Commissioner with broad discretion in determining whether a particular method of accounting clearly reflects income. *RLC Indus. Co. v. Commissioner*, 98 T.C. 457, 491 (1992); *Capitol Fed. Sav. & Loan Association v. Commissioner*, 96 T.C. 204, 209 (1991); *Prabel v. Commissioner*, 91 T.C. 1101, 1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989). The Commissioner's determination is entitled to more than the usual presumption of correctness. *RLC Indus. Co. v. Commissioner, supra* at 491; *RECO Indus., Inc. v. Commissioner*, 83 T.C. 912, 920 (1984); *Peninsula Steel Products & Equip. Co. v. Commissioner*, 78 T.C. 1029, 1044 (1982). Accordingly, the Commissioner's interpretation of the "clear reflection standard [of section 446(b)] 'should not be interfered with unless clearly unlawful.'" *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532 (1979) (quoting *Lucas v. American Code Co.*, 280 U.S. 445, 449 (1930)). The taxpayer bears "a heavy burden of [proof]," and the Commissioner's determination "is not to be set aside unless shown to be 'plainly arbitrary.'" *Thor Power Tool Co. v. Commissioner, supra* at 532–533 (quoting *Lucas v. Structural Steel Co.*, 281 U.S. 264, 271 (1930)).

The issue of whether the taxpayer's method of accounting clearly reflects income is a question of fact to be determined

---

[6] All section and Code references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court's Rules of Practice and Procedure.

on a case-by-case basis. See *Pacific Enterprises & Subs. v. Commissioner*, 101 T.C. 1, 13 (1993); *RLC Indus. Co. v. Commissioner, supra* at 489; *Hamilton Indus., Inc. v. Commissioner*, 97 T.C. 120, 128–129 (1991); *RECO Indus., Inc. v. Commissioner, supra* at 920; *Peninsula Steel Prod. & Equip. Co. v. Commissioner, supra* at 1045; *Sam W. Emerson Co. v. Commissioner*, 37 T.C. 1063, 1067 (1962). In *Capitol Fed. Sav. & Loan Association v. Commissioner, supra* at 213, we stated:

In reviewing the Commissioner's actions, however, we do not substitute our judgment for the Commissioner's, nor do we permit taxpayers to carry their burden of proof by a mere preponderance of the evidence. Taxpayers are required to clearly show that the Commissioner's action was arbitrary, capricious, or without sound basis in fact. [Citations omitted.]

In reviewing the Commissioner's determination that the taxpayer's method of accounting does not clearly reflect income, the function of a court is to determine whether there is any adequate basis in law for the Commissioner's conclusion. *RCA Corp. v. United States*, 664 F.2d 881, 886 (2d Cir. 1981); *Louisville & N.R.R. v. Commissioner*, 641 F.2d 435, 439 (6th Cir. 1981), affg. in part, revg. in part and remanding 66 T.C. 962 (1976). Consequently, for petitioner to prevail, it must prove that respondent's disallowance of petitioner's deductions beyond the amounts petitioner paid to purchase the annuity contracts is arbitrary and capricious and without sound basis in fact or law.

Before we turn to the parties' arguments, a simple illustration will help frame the issue and highlight the distortion about which respondent complains. For our illustration, we take the numbers from settlement agreement A, set forth in appendix A, which provides for the claimant to be paid $504,000 in 42 equal, annual installments of $12,000. The payments are to be made from an annuity contract owned by petitioner, which cost $141,124. The implicit rate of return on the investment in the annuity contract is 8.19 percent. For its taxable year 1980, petitioner claims a current deduction of $504,000.

Assuming for the purposes of this illustration that, but for the settlement agreement in question, petitioner would have current taxable income in 1980 of at least $504,000, it is instructive to compare three scenarios: (1) In the first sce-

nario, the accident in question does not occur, the result of which is that petitioner receives an additional $504,000 of currently taxable income, the after-tax proceeds of which are invested over 42 years (no accident); (2) in the second scenario, the accident does occur, but petitioner discharges its liability in full by currently paying and deducting $141,124 and investing the remainder over 42 years (current payoff); and (3) in the third scenario, the events occur as they did in the instant case and petitioner currently deducts the total payments to be paid over 42 years, or $504,000 (full deduction).

Under the first scenario, assuming petitioner would be subject to a 40-percent marginal tax rate, petitioner would be left with $302,400 after tax. Assuming further that petitioner could earn an after-tax rate of return of 8.19 percent, the $302,400 would grow to $8,249,751 over 42 years.

Under the second scenario, petitioner would currently deduct only the $141,124 it paid for the annuity leaving it with $362,876 of taxable income on which it would pay tax of $145,150, leaving $217,726 after tax. If the $217,726 is invested over the 42-year period, earning an after-tax rate of return of 8.19 percent, it would grow to $5,939,756.

Under the third scenario, petitioner would currently deduct the full $504,000 it was required to pay the tort claimants (the total of the $12,000 in annual payments over the 42-year period), and petitioner would pay no tax. Investing the $504,000 at an after-tax rate of return of 8.19 percent and taking into account annual payments of $12,000, petitioner, after 42 years, would have $9,898,901 remaining.

Summarizing:

| Scenario | After-tax income | Investment growth after 42 years |
|---|---|---|
| 1. No accident | $302,400 | $8,249,751 |
| 2. Current payoff | 217,726 | 5,939,756 |
| 3. Full deduction | 504,000 | [1] 9,898,901 |

[1] This figure reflects the investment remaining after annual payments of $12,000 are made to the tort claimant over the 42-year period.

In the instant case, petitioner is claiming scenario 3 treatment. When we compare scenario 3 with scenario 1, peti-

tioner fares better than if the accident never occurred. As the illustration shows, if petitioner were allowed a full deduction for all of the future payments to the tort claimants, it would lead to the incongruous result that the greater a taxpayer's nominal liability for negligence, the more it benefits.[7] In effect here, the Government funds the payments to the tort victims and, in addition, petitioner is left with a greater fund than if the accident never occurred. As can be expected, the distortion caused by fully deducting payments extended over a long period of time has been a much-discussed topic.[8] The relevant comparison, however, is between scenario 2, the treatment petitioner used for financial purposes, and scenario 3, the treatment petitioner seeks for tax purposes. Respondent determined that petitioner's deduction should be limited to scenario 2.

Petitioner's position is grounded upon three principal arguments: (1) That expenses which satisfy the "all events" test[9] cannot be disallowed under section 446(b) even if the accrual would not result in a clear reflection of income; (2) that respondent's position is a veiled attempt by respondent to apply post-1984 law to the instant case; and (3) that deferral of petitioner's deduction will result in a mismatching of its income and expenses. We will address each of petitioner's arguments in turn.

---

[7] See McGown, "Structured Settlements: Deduct Now and Pay Later", 60 Taxes 251, 260 (1982) ("Structured settlements involving payments over a period of years are becoming popular with both plaintiffs and defendants of lawsuits. In certain cases, where the defendant is an accrual basis-taxpayer and not fully covered by insurance, the potential tax benefits are momentous. They can make being sued an economic benefit rather than a detriment.").

[8] See, e.g., Aidinoff & Lopata, "Section 461 and Accrual Method Taxpayers: The Treatment of Liabilities Arising From Obligations To Be Performed in the Future", 33 Tax Law. 789 (1980); Committee on Taxation of the Association of the Bar of the City of New York, "Transactions Involving Deferred Payment of Accrued Liabilities: Federal Income Tax and the Time Value of Money", 38 Rec. A.B. City N.Y. 555 (1983), reprinted in 20 Tax Notes 699 (Aug. 29, 1983); Cunningham, "A Theoretical Analysis of the Tax Treatment of Future Costs", 40 Tax Law Rev. 577 (1985); Ferencz, "A Review of Tax Planning Techniques for Mismatching Income and Expense", 61 Taxes 829 (1983); Gunn, "Matching of Costs and Revenues as a Goal of Tax Accounting", 4 Va. Tax Rev. 1 (1984); Halperin, "Interest in Disguise: Taxing the 'Time Value of Money'", 95 Yale L.J. 506 (1986); Jensen, "The Deduction of Future Liabilities by Accrual-Basis Taxpayers: Premature Accruals, the All Events Test, and Economic Performance", 37 U.L. Rev. 443 (1985); Johnson, "Silk Purses from a Sow's Ear: Cost Free Liabilities Under the Income Tax", 3 Am. J. Tax Poly., 231 (1984); Note, "Protecting the Public Fisc: Fighting Accrual Abuse with Section 446 Discretion", 83 Colum. L. Rev. 378 (1983).

[9] Sec. 1.446–1(c)(1)(ii), Income Tax Regs., as in effect for 1980, provides that under an accrual method "deductions are allowable for the taxable year in which all the events have occurred which establish the fact of the liability giving rise to such deduction and the amount thereof can be determined with reasonable accuracy."

Petitioner's first argument is that respondent's determination is an abuse of discretion because the obligations which gave rise to the deduction satisfy the all events test and consequently cannot be disallowed on the theory that the deductions do not clearly reflect income. We disagree. Based upon our analysis below, we hold that satisfaction of the all events tests for accrual does not necessarily preclude respondent's use of section 446(b) to determine that the accrual does not clearly reflect income. As stated above, the parties presented extensive arguments concerning whether the obligations in question meet the all events test. We, however, do not address those arguments, and, for the purpose of our discussion below, we assume that the all events test has been satisfied.

Petitioner relies heavily on *United States v. Hughes Properties, Inc.*, 476 U.S. 593 (1986). Petitioner contends that *Hughes Properties* stands for the proposition that an accrual basis taxpayer may deduct an expense that satisfies the all events test in the year of accrual, regardless of the time of payment. We find *Hughes Properties* to be distinguishable. *Hughes Properties* involved an accrual basis taxpayer which owned a gambling casino in Nevada. The casino had several special slot machines that provided for "progressive" jackpots; i.e., the jackpots increased over time based on the amount of machine usage, until either the jackpots were won or maximum figures were reached. Each progressive slot machine had a "payoff indicator" that showed casino customers the current level of the jackpot. At the end of each taxable year, the taxpayer calculated the sum of the payoff indicator amounts for all progressive slot machines. From that figure, the taxpayer subtracted the equivalent figure that had been computed at the end of the prior year. The taxpayer accrued the increase in the future payoff liability as a deductible ordinary business expense.

The Commissioner disallowed the deduction on the ground that the all events test had not been satisfied because the liability was not fixed. Prior to addressing the issue of whether the taxpayer satisfied the all events test, the Supreme Court stated:

The major responsibility of the Internal Revenue Service is to protect the public fisc. Therefore, although section 446(c)(2) permits a taxpayer to use

an accrual method for tax purposes if he uses that method to keep his books, section 446(b) specifically provides that if the taxpayer's method of accounting "does not clearly reflect income," the Commissioner may impose a method that "does clearly reflect income." Thus, the "Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income." [*Id.* at 603; citations omitted.]

The Supreme Court then rejected the Commissioner's assertion that the liability in question was too contingent to meet the all events test. In the context of dismissing the Government's fear of the potential for manipulation, the Court stated:

> None of the components that make up this parade of horribles, of course, took place here. Nothing in this record even intimates that * * * [the taxpayer] used its progressive machines for tax-avoidance purposes. Its income from these machines was less than 1 percent of its gross revenue during the tax years in question. * * * [The taxpayer's] revenue from progressive slot machines depends on inducing gamblers to play the machines, and, if it sets unreasonably high odds, customers will refuse to play and will gamble elsewhere. Thus, respondent's economic self-interest will keep it from setting odds likely to defer payoffs too far into the future. Nor, with Nevada's strictly imposed controls, was any abuse of the kind hypothesized by the Government likely to happen. *In any event, the Commissioner's ability, under section 446(b) of the Code, to correct any such abuse is the complete practical answer to the Government's concern.* * * * [*Id.* at 605; fn. ref. omitted; emphasis supplied.]

The Supreme Court's statement that the "complete practical answer" to correct abuses of the accrual method of accounting lies in the Commissioner's broad authority under section 446(b) indicates to us that, had the obligation which the taxpayer sought to accrue in *Hughes Properties* extended over 58 years, the Commissioner's time value of money concerns would not have been dismissed by the Court. The length of the payout in the instant case causes a gross distortion of petitioner's true economic obligations to the tort claimants.

Unlike the situation in *Hughes Properties,* [10] in the instant case, the significant length of time for the payout is the cause of the distortion. Moreover, petitioner's self-interest is furthered by deferring the payout period. Additionally, the instant case does not involve a State law or regulation that

---

[10] The average deferral of the jackpots in *Hughes Properties* was only 4½ months. See *United States v. Hughes Properties, Inc.,* 476 U.S. 593, 596 n.1 (1986).

specifically limits the ability of petitioner to extend the payments over long periods of time.

Petitioner quotes two statements from *Hughes Properties*: (1) "An accrual method taxpayer is entitled to deduct an expense in the year it is 'incurred,' section 162(a), regardless of when it is actually paid." *United States v. Hughes Properties, Inc.*, 476 U.S. at 599; and (2) "the accrual method itself makes irrelevant the timing factor that controls when a taxpayer uses the cash receipts and disbursements method." *Id.* at 604 (fn. ref. omitted). We think petitioner reads too much into such statements. When read in context, the statements are merely a reiteration of the differences between an accrual method and the cash receipts and disbursements method of accounting. In reaffirming such differences, the Supreme Court did not intend to impose limitations on the Commissioner's discretion under section 446(b). To the contrary, the above-quoted language from the Supreme Court's opinion in *Hughes Properties* specifically sanctions the use of section 446(b) by the Commissioner to cure abuses which might arise out of the inappropriate use of an accrual method.

Petitioner also relies on *Hallmark Cards, Inc. v. Commissioner*, 90 T.C. 26 (1988). Petitioner contends that because the Code allows taxpayers to use an accrual method, the Commissioner has no authority to reject the method when it meets the all events tests for accrual. In furtherance of its contention, petitioner cites the following statement from *Hallmark Cards*:

> Respondent's broad authority to determine whether a taxpayer's accounting method clearly reflects income is limited, in that he may not reject, as not providing a clear reflection of income, a method of accounting employed by the taxpayer which is specifically authorized in the Code or regulations and has been applied on a consistent basis. [*Hallmark Cards, Inc. v. Commissioner*, 90 T.C. at 31; citation omitted.]

We think that petitioner interprets the foregoing quote too broadly. As we read *Hallmark Cards*, we addressed only the question of whether the all events test had been met for the accrual of income by the taxpayer. In *Hallmark Cards*, we agreed with the taxpayer that the all events test had not been met and therefore that accrual of the income in question was not proper. In that case, the deferral of the income

was from December 31 to January 1. Consequently, *Hallmark Cards* did not involve a gross distortion caused by a long payout period such as that involved in the instant case. Moreover, the principle that a method specifically sanctioned in the Code or regulations cannot be rejected under section 446(b) is derived from *Orange & Rockland Utilities, Inc. v. Commissioner*, 86 T.C. 199, 215 (1986). In that case, we held that the "cycle meter reading" method provided in the regulations and used by the taxpayer was a permissible method under section 446(c)(2). *Orange & Rockland* dealt with a specific method of accrual; it did not suggest that *any* method of accrual is to be protected from the Commissioner's scrutiny under section 446(b). Consequently, we do not think that *Hallmark Cards* stands for the proposition that no accrual method may be rejected under section 446(b) merely because section 446(c) permits an accrual method to be used. Indeed, in *Estate of Ratliff v. Commissioner*, 101 T.C. 276, 281 (1993), we recently stated that *Hallmark Cards* stands for the proposition that "respondent does not have unbridled discretion under section 446 in that she cannot force a taxpayer to adopt another method of accounting if the taxpayer's method clearly reflects income." In short, we view *Hallmark Cards* as addressing only the issue of whether the taxpayer satisfied the all events test.

In the instant case, we think that the statute itself provides clear guidance on the issue of whether the clear reflection standard is subordinate to the all events test. Section 446 provides in relevant part:

SEC. 446(a). GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If * * * the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

(c) PERMISSIBLE METHODS.—*Subject to the provisions of subsections (a) and (b)*, a taxpayer may compute taxable income under any of the following methods of accounting—

(1) the cash receipts and disbursements method;

(2) *an*[11] accrual method;
[Emphasis supplied.]

The provisions of section 446 make it clear that a taxpayer's ability to use one or more of the methods of accounting listed in 446(c) is contingent upon the satisfaction of subsections (a) and (b). The statute does not limit the Commissioner's discretion under section 446(b) by the taxpayer's mere compliance with the methods of accounting generally permitted under section 446(c). To the contrary, section 446 provides that the use of an accounting method is conditioned upon the method clearly reflecting income "in the opinion of the Secretary". In short, the statute clearly provides that the taxpayers may use an accrual method so long as it clearly reflects income.[12]

Moreover, the regulations under section 446 comport with our interpretation of the statute. Section 1.446–1(a)(2), Income Tax Regs., states:

It is recognized that no uniform method of accounting can be prescribed for all taxpayers. Each taxpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income. A method of accounting which reflects the consistent application of generally accepted accounting principles[13] in a particular trade or business in accordance with accepted conditions or practices in that trade or business *will ordinarily* be regarded as clearly reflecting income. * * * [Emphasis supplied.]

The regulations under section 446 simply state that the consistent application of accounting methods permitted under section 446(c) will generally be regarded as clearly reflecting income and that *no* method of accounting is acceptable unless it passes the Commissioner's scrutiny for the clear reflection

---

[11] The use of the word "an" in sec. 446(c)(2) suggests that more than one accrual method of accounting is permissible under sec. 446(c). Accordingly, although "an" accrual method of accounting is authorized generally by sec. 446(c), no particular method of accrual accounting is *specifically* authorized with respect to structured settlements. In this manner, it can be said that respondent has not denied petitioner the use of a specifically authorized accounting method.

[12] It is also clear that, although the all events test is fundamental to deciding the year before which no accrual is permitted, it does not, as a matter of law, determine the minimum amount that *must* be accrued upon the satisfaction of the test.

[13] As noted above, for financial reporting purposes, petitioner deducted the cost of the annuities. Although there is nothing in the record indicating whether petitioner complied with generally accepted accounting principles for financial reporting purposes, we think that the fact that petitioner's securities are publicly traded makes it highly likely that petitioner's financial reports complied with generally accepted accounting principles. 15 U.S.C.A. sec. 78n(a) (West 1981).

of income. *Thor Power Tool Co. v. Commissioner*, 439 U.S. at 603. Neither section 446 nor the regulations provide that the satisfaction of the tests for accrual will alone be dispositive of the issue of whether the taxpayer's method of accounting clearly reflects income.

Such an interpretation would be at odds with the Supreme Court's statement in *United States v. Hughes Properties, Inc.*, 476 U.S. 593 (1986), regarding the Commissioner's authority to curb abuses under section 446(b). It would also be inconsistent with our many cases holding that the Commissioner has the authority under section 446(b) to require a taxpayer to report specific items of income or expense on the basis of a method of accounting other than the one being used by the taxpayer, when the taxpayer's method does not clearly reflect income. Frequently, we have allowed the Commissioner to require taxpayers who utilize the cash method of accounting to accrue specific items of income and expense. E.g., *Resnik v. Commissioner*, 66 T.C. 74 (1976), affd. per curiam 555 F.2d 634 (7th Cir. 1977); *Cole v. Commissioner*, 64 T.C. 1091 (1975), affd. 586 F.2d 747 (9th Cir. 1978); *Burck v. Commissioner*, 63 T.C. 556 (1975), affd. 533 F.2d 768 (2d. Cir. 1976); *Sandor v. Commissioner*, 62 T.C. 469 (1974), affd. 536 F.2d 874 (9th Cir. 1976).

In *Prabel v. Commissioner*, 91 T.C. 1101 (1988), affd. 882 F.2d 820 (3d Cir. 1989), we upheld the Commissioner's disallowance of an accrual basis taxpayer's accrual of interest deductions under the Rule of 78 for long-term obligations because the Rule of 78 method, when applied to the long-term real estate financing involved in that case, caused a gross distortion in the taxpayer's income and did not satisfy the clear reflection of income standards of section 446(b).

Petitioner also relies on *Burnham Corp. v. Commissioner*, 90 T.C. 953 (1988), affd. 878 F.2d 86 (2d Cir. 1989). Petitioner argues that, in *Burnham Corp.*, we specifically rejected the notion that the Commissioner could, under the clear reflection of income standard of section 446(b), require a discounting of deductions for future payments to present value. We, however, find that *Burnham Corp.* is distinguishable. In *Burnham Corp.*, the taxpayer, who was a defendant in a legal action for patent infringement, settled the lawsuit by agreement. According to the terms of the settlement agreement, the taxpayer was unconditionally obligated to

make payments to the claimant for a period of 4 years, after which the taxpayer was obligated to make payments to the claimant for the claimant's lifetime, which was estimated at 16 years. On its return, the taxpayer deducted the present value of the payments it would have to make to the claimant, based on actuarial tables. Upon challenge by the Commissioner, on the grounds that the all events test had not been met, the taxpayer claimed a deduction for the full amount of liability contending that no present value discount was required. After holding that the settlement agreement had irrevocably fixed the taxpayer's liability and that the all events test was satisfied, the Court stated that the parties had been required to submit supplementary briefs on the issue of whether the Commissioner could require the taxpayer to discount the obligation to present value under section 446(b). On brief, the Commissioner conceded the issue. The opinion concludes: "because of respondent's concession, we do not require petitioner to discount the estimated payments". *Burnham Corp. v. Commissioner, supra* at 960.[14] Respondent makes no such concession in the instant case. In light of the concession in *Burnham Corp.*, we view that case as deciding the issue of whether the all events test had been met. We do not view *Burnham Corp.* as establishing the principle that satisfaction of the all events test precludes disallowance of the accrual under section 446(b) as a matter of law. Accordingly, *Burnham Corp.* is not controlling on the issue before us.

Turning to petitioner's next principal argument, petitioner contends that respondent's position is a veiled attempt to apply post-1984 law to the 1980 taxable year. During 1984, Congress enacted section 461(h)(2)(C)(ii),[15] which, in effect,

---

[14] In affirming the Tax Court, the Court of Appeals for the Second Circuit only addressed the issue of whether the all events test was satisfied and did not address the Commissioner's authority under sec. 446(b). *Burnham v. Commissioner*, 878 F.2d 86 (2d Cir. 1989), affg. 90 T.C. 953 (1988).

[15] SEC. 461(h). CERTAIN LIABILITIES NOT INCURRED BEFORE ECONOMIC PERFORMANCE.—

* * * * * * *

(1) IN GENERAL.—For purposes of this title, in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs.

(2) TIME WHEN ECONOMIC PERFORMANCE OCCURS.—Except as provided in regulations prescribed by the Secretary, the time when economic performance occurs shall be determined under the following principles:

requires all taxpayers to use the cash method of accounting to report deductions for payments of tort liabilities. Although Congress decided to put accrual basis taxpayers on the cash method of accounting for tort liabilities, we find nothing in the legislative history of section 461(h) indicating that the Commissioner did not have the authority to limit such deductions under the clear reflection of income standard of section 446(b) prior to that time. The legislative history states:

Allowing a taxpayer to take deductions currently for an amount to be paid in the future overstates the true cost of the expense to the extent the time value of money is not taken into account; the deduction is overstated by the amount the face value exceeds the present value of the expense. [H. Rept. 98–432 (Part 2), at 1254 (1984); see also S. Prt. 98–169 (Vol. 1), at 266 (1984); Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 260 (J. Comm. Print 1984).]

It is clear that Congress decided to adopt a specific remedy for a perceived accounting distortion. That Congress decided to do so, however, does not preclude or limit the Commissioner's authority to rectify abusive distortions on a case-by-case basis under section 446(b) for tax years prior to the effective date of section 461(h).

Petitioner contends that the legislative history of section 461(h)(2)(c)(ii) reveals that its provisions were intended to change prior law, and that prior law precluded respondent from using time value of money concepts in order to demonstrate that a taxpayer's method of accounting does not clearly reflect income under section 446(b). Petitioner relies upon the following statement: "The committee believes that the rules relating to the time for accrual of a deduction by a taxpayer using the accrual method of accounting should be changed to take into account the time value of money." S. Prt. 98–169, at 266 (1984). The prior law to which the statement refers, however, is the all events test under section 1.461–1(a)(2), Income Tax Regs. It does not refer to section 446(b). Moreover, the legislative history of section 461(h)

---

*     *     *     *     *     *     *

(C) WORKERS COMPENSATION AND TORT LIABILITIES OF THE TAXPAYER.—If the liability of the taxpayer requires a payment to another person and—

 (i) arises under any workers compensation act, or

 (ii) arises out of any tort,

economic performance occurs as the payments to such person are made. Subparagraphs (A) and (B) shall not apply to any liability described in the preceding sentence.

specifically refers to *Mooney Aircraft, Inc. v. United States,* 420 F.2d 400 (5th Cir. 1969), which held that a taxpayer, which gave purchasers of its airplanes bonds that were redeemable when the planes were permanently retired from service, was not allowed a current deduction for the face value of the bonds because the possible interval between the accrual and payment was "too long". The court's holding in *Mooney,* although quite terse, rested on the Commissioner's authority to deny the deduction under the clear reflection of income standard of section 446(b). *Id.* at 410. In short, we do not think Congress intended to limit respondent's authority under section 446(b) in any way by enacting section 461(h) in 1984. *United States v. Southwestern Cable Co.,* 392 U.S. 157, 170 (1968) ("the views of one Congress as to the construction of a statute adopted many years before by another Congress have 'very little, if any, significance'"); *United States v. American College of Physicians,* 475 U.S. 834, 846–847 (1986); *Rainwater v. United States,* 356 U.S. 590, 593 (1958); *Mars, Inc. v. Commissioner,* 88 T.C. 428, 435 (1987).[16]

Finally, we address petitioner's last principal argument. Petitioner argues that respondent's position mismatches income and expense. We do not agree. We have concluded above that petitioner's method does not clearly reflect income. A corollary to the proposition that petitioner's method must clearly reflect income is that the method which the Commissioner seeks to apply to the taxpayer must also clearly reflect income. Section 446(b) states:

If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, *does clearly reflect income.* [Emphasis supplied.]

Courts will not approve the Commissioner's change of a taxpayer's method from an incorrect method to another incorrect

---

[16] Respondent's notice of deficiency allows petitioner a deduction for the amounts petitioner expensed on its books for financial purposes; i.e., the cost of the annuities during the year in issue. If respondent were applying post-1984 law to petitioner's deductions as argued by petitioner, then petitioner would only be allowed to deduct the amounts actually paid to the tort claimants. Sec. 461(h)(2)(c)(ii). Because petitioner retained ownership of the annuities, petitioner would not be allowed to deduct their cost; the cost of the annuities is merely a capital investment by petitioner.

method. *Prabel v. Commissioner*, 91 T.C. 1101, 1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989).

In the instant case, we think that the method of accounting petitioner used for financial reporting purposes resulted in a better matching of its income and expenses than the method used for tax purposes.[17] Although a basic principle of financial accounting is the matching of income with related expenses, the principal purpose of tax accounting is the accurate reflection of the taxpayer's income, a concept which does not necessarily correlate with the goal of financial accounting. *Thor Power Tool Co. v. Commissioner*, 439 U.S. at 541. In the instant case, for financial reporting purposes, petitioner expensed only the costs of the annuities it purchased, which were not exceeded by the present value of the deferred payments it was obligated to make.[18] As we see it, the true economic costs of petitioner's losses to the tort claimants are the amounts it paid for the annuities. With regard to settlements for which petitioner did not purchase annuities,[19] the present value of the obligations is the true economic cost of petitioner's loss. Consequently, the accrual method of accounting which petitioner used for financial reporting purposes[20] resulted in the proper matching of income and expense and clearly reflects petitioner's income. Accordingly, we sustain respondent's determination.

Finally, we want to make clear that the mere fact that a deduction which accrues prior to the time payment is made (the timing factor) does not, by itself, cause the accrual to run afoul of the clear reflection of income requirement. Inherent in the use of an accrual method is the fact that a deduction may be allowed in advance of payment. Our holding in the instant case is not intended to draw a bright line that can be applied mechanically in other circumstances. We decide only the ultimate question of fact in the instant case; namely, whether, for tax purposes, petitioner's method of

---

[17] We have held that the Commissioner has the authority under sec. 446(a) to require a taxpayer to report income on the basis of the same accounting method used for bookkeeping purposes. *Mifflin v. Commissioner*, 24 T.C. 973 (1955); see also *Yates v. United States*, 205 F. Supp. 738 (E.D. Ky. 1962).

[18] In other years, with regard to settlements for which petitioner did not purchase annuity contracts, it expensed the present value of the future payments.

[19] As noted above, during 1980, the year in issue, all of the structured settlements into which petitioners entered were funded by annuities.

[20] The method petitioner used for financial purposes was an accrual method rather than the cash method as petitioner did not deduct the payments to the tort claimants as they were made.

accounting for its obligations under the structured settlements clearly reflects income. We hold that it does not and that the Government did not abuse its discretion in making that determination.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

HAMBLEN, PARKER, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, RUWE, WHALEN, COLVIN, HALPERN, BEGHE, and LARO, *JJ.,* agree with this majority opinion.

CHABOT, *J.,* did not participate in the consideration of this opinion.

---

## APPENDIX A

FORD MOTOR CO.
SUMMARY OF 1980
STRUCTURED SETTLEMENTS

| Name | DOB/(age) | Annuity date | Annuity premium | Type | Yearly amount/years (total) | Total |
|---|---|---|---|---|---|---|
| A[1] | - - - | 3/80 | $141,124 | I | $12,000/42 (504,000) | $504,000 |
| B | - - - | 4/80 | 97,903 | I | 8,400/40 (336,000) | 336,000 |
| C | 10/74 (6) | 4/80 | 99,086 | I | 25,000/10–94 (cash payment date) 8,400/15 (151,000) then 5,400/21–65 yrs. (237,600) | 388,600 |
| D | 11/43 (37) | 11/90 | 153,344 | II | 12,000 plus 3% increase per yr./36.3 (769,245) | 769,245 |
| E[1] | 9/59 (21) | 10/80 | 33,402 | III | 3,000/20 yrs. (60,000) 3,000/20–57.9 (113,700) | 173,700 |
| FI | - - - | 3/80 | 439,911 | I | 47,475/20 yrs. (949,500) | 949,500 |
| FII | 2/35 (45) | 3/80 | 854,569 | III | 87,000 plus 5% increase per yr./10 yrs. (943,343) 122,167 plus 5% increase per yr./35.0 (5,830,681) | 6,774,024 |
| FIII | 2/35 (45) | 3/80 | 114,993 | II | 12,000 plus 5% increase per yr./35.0 (1,083,852) | 1,083,852 |
| G | - - - | 7/80 | 225,200 | I | 22,500/40 | 990,000 |
| H[2] | 6/76 (4) | 7/80 | 81,800 | I | 25,000/6 yr. starting 6/94 (150,000) 100,000/6–00 150,000/6–03 250,000/6–07 | 650,000 |
| I[1] | - - - | 4/80 | 139,862 | I | 12,000/40 (480,000) | 480,000 |
| J[1] | (9) | 4/80 | 98,245 | I | 25,000/1–92 (cash payment date) 8,400/12 (100,800) 5,400/44 (237,600) | 363,400 |
| K[1] | (11) | 4/80 | 97,755 | I | 25,000/10–89 (cash payment date) 8,400/10 (84,000) 5,400/44 (237,600) | 346,600 |
| L | 9/53 (27) | 11/80 | 176,502 | III | 12,000 plus 3% increase per yr./20 (322,444) 12,000 plus 3% increase per yr./20–52.1 (1,143,491) | 1,465,935 |
| M | 11/42 (38) | 5/80 | 239,934 | III | 21,600/10 (216,000) 24,000/11–20 (240,000) 26,400/21–30 (264,000) 26,400/30–41.6 (306,240) | 1,026,460 |

FORD MOTOR CO.–Continued
SUMMARY OF 1980
STRUCTURED SETTLEMENTS

| Name | DOB/(age) | Annuity date | Annuity premium | Type | Yearly amount/years (total) | Total |
|------|-----------|-------------|-----------------|------|------------------------------|-------|
| N | 6/51 (29) | 7/80 | 391,623 | III | 12,000 plus 5% increase per yr./30 (1,195,899) / 12,000 plus 5% increase per yr./30–43.6 (1,465,997) | 2,661,896 |
| O[1] | 6/53 (27) | 12/80 | 208,136 | III | 16,206 plus 3% increase per yr./20 (453,300) / 16,206 plus 3% increase per yr /20–45.4 (1,037,407) | 1,472,207 |
| P | 5/58 (22) | 5/80 | 361,404 | III | 30,000/10 (300,000) / 35,000/11–30 (700,000) / 35,000/30–56.9 (941,500) | 1,941,500 |
| QI | - - - | 5/80 | 167,694 | I | 15,000/50 (750,000) | 750,000 |
| QII | - - - | 5/80 | 67,078 | I | 6,000/50 (300,000) | 300,000 |
| R | - - - | 5/80 | 67,078 | I | 6,000/50 (300,000) | 300,000 |
| S | - - - | /80 | 167,694 | I | 15,000/50 (750,000) | 750,000 |
| Totals | | | 4,424,587 | | | 24,477,699 |

[1] Contracts for which annuity referenced in settlement documents.
[2] Annuity dated 7/80, but first payment not due until 6/94.

## APPENDIX B

| Name | Column A Respondent's statutory notice allowance | Column B Return deduction | Column C Petitioner's affirmative claim | Column D Petitioner's claimed deduction (columns B&C) | Column E Amount in dispute |
|------|------|------|------|------|------|
| A | $141,124 | -0- | $504,000 | $504,000 | $362,876 |
| B | 99,086 | $388,600 | - - - | 388,600 | 289,514 |
| C | 97,903 | 336,000 | - - - | 336,000 | 238,097 |
| D | 76,672 | 500 | 769,245 | 769,745 | 616,401 |
| E | 33,402 | 60,000 | 113,700 | 173,700 | 140,298 |
| FI | 439,911 | 439,911 | 509,589 | 949,500 | 509,589 |
| FII | 854,569 | 854,569 | 5,919,455 | 6,774,024 | 5,919,455 |
| FIII | 114,993 | 114,993 | 968,859 | 1,083,852 | 968,859 |
| G | 224,700 | 990,000 | - - - | 990,000 | 765,300 |
| H | 82,350 | 650,000 | - - - | 650,000 | 567,650 |
| I | 97,755 | 363,400 | - - - | 363,400 | 265,645 |
| J | 98,245 | 346,600 | - - - | 346,600 | 248,355 |
| K | 139,862 | 480,000 | - - - | 480,000 | 340,138 |
| L | 88,251 | 161,222 | 1,304,713 | 1,465,935 | 1,289,433 |
| M | 239,934 | 720,000 | 306,240 | 1,026,240 | 786,306 |
| N | 391,623 | 1,195,899 | 1,465,997 | 2,661,896 | 2,270,273 |
| O | 208,136 | 435,300 | 1,037,407 | 1,472,707 | 1,264,571 |
| P | 361,404 | 1,000,000 | 941,500 | 1,941,500 | 1,580,096 |
| QI | 167,694 | 750,000 | - - - | 750,000 | 582,306 |
| QII | 67,078 | 300,000 | - - - | 300,000 | 232,922 |
| R | 67,078 | 300,000 | - - - | 300,000 | 232,922 |
| S | 167,694 | 750,000 | - - - | 750,000 | 582,306 |
| Total | 4,259,464 | 10,636,994 | 13,840,705 | 24,477,699 | 20,053,312 |

GERBER, *J.*, dissenting: I respectfully disagree with the majority's holding that petitioner's method of accounting for its settlement agreements does not clearly reflect income.

The controversy in this case concerns the proper amount and timing of petitioner's accrual and deduction of 1980 tort claim settlements. Petitioner, for tax reporting purposes, is on the accrual method of accounting and has met the regulatory and case law requirements for accrual under the all events test. Respondent does not argue that petitioner manipulated accrual accounting methodology, or that the transactions lack substance or were designed for tax-avoidance purposes. Instead, respondent argues that the period between the deduction and payment is too long and distorts income, and that petitioner is entitled to deduct only the present value of its obligations to claimants under the structured settlements. That position is rooted in time value of money concepts and ignores established legal principles concerning the accrual method of accounting (the all events test) and results in the retroactive application of 1984 legislation.[1] Respondent's determination is accordingly without an adequate basis in law, plainly arbitrary, and, therefore, an abuse of discretion under section 446(b). Until 1984, the courts looked to the all events test as the standard to determine, for tax purposes, whether an obligation could be accrued and deducted.

*All Events Test*—The majority holds that, even assuming that the transactions pass the all events test, respondent may disallow a taxpayer's deduction because it does not clearly reflect income when subjected to a time value analysis. The majority declares that petitioner has the burden of proving that respondent's determination is an abuse of discretion. In order to meet that burden, petitioner would be required to show the lack of "any adequate basis in law for the Commissioner's conclusion." (Majority op. p. 92.) The majority's analysis is flawed because the all events test contains the standard by which accruals are measured.[2] There-

---

[1] Prior to the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 91(a), 98 Stat. 494, 598 (1984 Tax Act), time value of money standards did not play a role in the use of the accrual method of accounting for Federal tax purposes.

[2] The majority, by assuming that the all events test was met, has ignored the standards encompassed in that test for determining whether an item is deductible under the accrual method of accounting for income tax purposes. Assuming arguendo that the majority could determine that the reporting of a particular transaction clearly reflects income without reference to the all events test, the majority has not used the proper measure to reach its conclusion. If a taxpayer's transaction meets the statutory and regulatory standard and measure for accrual, then, under case law, the Commissioner has authority to inquire about any abuse which may cause

fore, an analysis of the all events test is necessary to decide whether respondent had an adequate basis in law for her determination. Under such an analysis, the majority reached the wrong conclusion because petitioner has shown here that there is no adequate basis in law for respondent's conclusion.

The all events test was judicially devised to measure whether an item can be accrued and deducted. Meeting the all events test normally qualifies a taxpayer for a deduction under the accrual method of accounting for a 1980 taxable year.[3] *United States v. Hughes Properties, Inc.*, 476 U.S. 593, 600 (1986). The all events test was formulated in case law more than 50 years ago and has long been embodied in section 1.461–1(a)(2), Income Tax Regs., which contains the following two requirements:

Under an accrual method of accounting, an expense is deductible for the taxable year in which [1] all the events have occurred which determine the fact of the liability and [2] the amount thereof can be determined with reasonable accuracy. * * *

The Supreme Court in *United States v. Hughes Properties, Inc., supra* at 599, 604, made clear that "An accrual-method taxpayer is entitled to deduct an expense in the year in which it is 'incurred,' § 162(a), regardless of when it is actually paid" and that "the accrual method itself makes irrelevant the timing factor that controls when a taxpayer uses the cash receipts and disbursements method." (Fn. ref. omitted.) The majority has incorrectly treated the holding in *Hughes Properties* as though it was purely factual in an effort to distinguish the facts of *Hughes Properties* without reconciling its foundational legal principles. Neither the legal principles[4] nor the factual context of *Hughes Properties* suggest or support the result reached by the majority.

The majority is correct in its articulation that respondent is not preempted from questioning whether an accounting

---

income not to be clearly reflected. The Commissioner, however, cannot invent or create a method for which there is no adequate basis in law. An abuse could occur in the manner that a taxpayer applies or manipulates a tax accounting method. But here petitioner applied the method in accord with case law and the regulations, and no tax avoidance purpose or manipulation has been found by the majority.

[3] Ordinarily, when a taxpayer has satisfied both prongs of the all events test, our inquiry would be complete. This is so because the two prongs address the questions of whether the obligation was fixed and, if fixed, its amount.

[4] Neither *United States v. Hughes Properties, Inc.*, 476 U.S. 593 (1986), nor any other case provides an established legal principle or standard that would require accrual method taxpayers to report structured settlements on a present value basis or using concepts of time value.

method or the particular treatment of a specific item under an accounting method clearly reflects income. But the fact that the deduction occurs prior to the payment (the timing factor) does not, by itself, cause the accrual to run afoul of the clear reflection requirement or the all events test. *Id.* The majority focuses upon the method by which petitioner funds its obligations and decides that petitioner is entitled to deduct only its true economic cost, which the majority holds is the cost of the annuities purchased to fund the obligations. In a pre-1984 setting, the majority's consideration of the taxpayer's method of funding in evaluating an accrual accounting method question results in treating taxpayers differently depending upon whether they funded their obligations. Further, those taxpayers who were better at or more successful in their funding approach would be treated differently from those who were less successful. The question of funding or current cost of a transaction is unique to the cash accounting method, whereas the accrual accounting method is concerned with the obligation to pay or right to receive. Accordingly, the all events test must be the proper pre-1984 measure of the amount of an obligation and whether it is deductible. Here, petitioner passed that test and so there must be some abuse or other reasoning by which to measure or show how income was not clearly reflected. The majority has not found or explained that cause or abuse.

In *Hughes Properties*, the Government argued that taxpayers would be able to meet the all events test but that a transaction might still not clearly reflect income. The Supreme Court indicated that "Nothing in * * * [that] record even intimates that * * * [the taxpayer] used its progressive machines for tax-avoidance purposes" and pointed out that the Commissioner had authority under section 446(b) to curb abuse which might occur in other cases. *Id.* at 605.

The type of abuse that the Supreme Court suggested that respondent could curb is not present in this case. The majority relies upon *Prabel v. Commissioner*, 91 T.C. 1101 (1988), affd. 882 F.2d 820 (3d Cir. 1989), a tax shelter type case where the transactions were contrived to produce tax benefits. In *Prabel* the taxpayer used an accelerated method of computing interest (Rule of 78 method) that bunches interest deductions on the front end of a payment schedule. Distortion was found because the proposed obligation was for an

extended period and a substantial portion of the deductions was taken early in the life of the stream of payments.

It was the use of an accelerated computation method that caused the distortion in *Prabel*, and this Court found that the Rule of 78 method was not appropriate for long-term payment schedules. In the context of *Prabel*, the Commissioner and this Court had available established alternative methods of reporting the transaction that more clearly reflected income. Petitioner here does not use an accelerated method or any methodology different from other taxpayers using the accrual method of accounting for pre-1984 tax purposes. Nor has the majority found that the accrual method is only appropriate for shorter term transactions. It is only by the use of a time value of money analysis and consideration of the method by which petitioner funds its obligations that the difference between the amount of the deduction accrued and the time value cost to petitioner is even revealed. The majority, however, has not discussed the fact that *all* accrual basis taxpayers have a time value benefit due to the accrual. Additionally, there is no analysis showing at what point the passage of time makes a particular accrual abusive or distorts income. Finally, without the time value analysis, it would not be possible to show that petitioner's transaction does or does not clearly reflect income.

Respondent does not challenge the accrual principle that the deduction and payment may fall in different tax periods. Instead, it is the time lapse and time value concepts that respondent contends are the cause for the lack of clear reflection determination regarding petitioner's claimed deductions. Respondent's contention raises the inquiries of whether the passage of time and/or matching of income and deductions concepts singly or jointly do or should result in petitioner's income not being clearly reflected.

A single case was cited by respondent and referenced by the majority in support of the position that accrued obligations that have been incurred are not deductible solely because of remoteness or differences between the time of the accrual and the payment. The majority recognizes the paucity of authority and/or explanation in that case. *Mooney Aircraft, Inc. v. United States*, 420 F.2d 400 (5th Cir. 1969) (a 1969 opinion which was issued without the benefit of the Supreme Court's 1986 opinion in *United States v. Hughes*

*Properties, Inc., supra*). Furthermore, *Mooney* is distinguishable from this case.

*Mooney* involved an aircraft manufacturer that issued $1,000 "bonds" in connection with the sale of aircraft. The bond was redeemable by the then owner of the aircraft at the time of the aircraft's ultimate retirement. In the year of sale, the taxpayer deducted $1,000 for each aircraft sold. The Court of Appeals for the Fifth Circuit,[5] after holding that the all events test had been met, held that the $1,000 deductions in the year of sale did not clearly reflect income for two integrated reasons: (1) "many or possibly most of the expenses which taxpayer wishes to presently deduct will not actually be paid for 15, 20 or even 30 years"; and (2) "The longer the time the less probable it becomes that the liability, though incurred, will ever in fact be *paid.*" *Mooney Aircraft, Inc. v. United States, supra* at 409, 410.

The first reason advanced in *Mooney* addresses the same question that was addressed in *United States v. Hughes Properties, Inc., supra*; i.e., that payment will not occur in the year of accrual. In *Hughes Properties* the taxpayer was obligated under State law to pay a gaming machine jackpot, but at the close of the taxable year no winner had been identified. Further, it was possible that the jackpot would not be won for several accounting periods. The Supreme Court in *Hughes Properties* held that the amount of the jackpot payable in that case was fixed and determinable despite the timelag. In this regard, businesses may accrue and pay obligations based upon differing facts and circumstances. It is arbitrary to establish a rule that any particular length of time, ipso facto, would result in the denial of an otherwise accruable deduction. Petitioner here did not autonomously choose the number of years for payment in order to obtain a current deduction. The deductions are claimed in connection with settlements of the contested claims of adversarial third parties. Petitioner did not have unfettered control over the timing of the payments.

Moreover, in *Burnham Corp. v. Commissioner*, 90 T.C. 953, 959–960 (1988), affd. 878 F.2d 86 (2d Cir. 1989), we found *Mooney* to be both inapposite to and distinguishable from

---

[5] Appeal of the decision in this case would ordinarily be taken to the Court of Appeals for the Sixth Circuit.

situations such as this one involving payments under a settlement agreement which commenced contemporaneously with the accrual and claimed deduction.

Finally, the discussion in the *Mooney* opinion seems to blur the distinction between the all events test and the measurement of the clear reflection of income. Although the discussion in *Mooney* straddles both concepts, it appears more aptly to be rooted in the principles of the all events test. In *Mooney*, it was stated that the taxpayer had passed both prongs of the all events test. Notwithstanding that holding, the reasons provided for disallowing the $1,000 deductions would just as easily have supported the holding that the all events test had not been met. The majority opinion in this case follows the same erroneous approach as was followed in *Mooney*.

*Application of 1984 Legislation*—It is significant to note that the majority has, for the first time in a taxable year prior to the enabling 1984 tax legislation, permitted respondent to require an accrual basis taxpayer to use time value standards to measure accrual transactions. Although the accruals and deductions here may represent extreme examples of the deferral concept inherent in the accrual method, respondent was not justified in denying the deduction as decided by the majority.

Congress, by enacting section 461(h)(2)(C)(ii) in the 1984 Tax Act, specifically required all taxpayers to, in essence, use the cash method to account for periodic payments made pursuant to tort settlements occurring after July 18, 1984. That statute provides that, for certain described items, "the all events test shall not be treated as met any earlier than when economic performance * * * occurs." Deficit Reduction Act of 1984, Pub. L. 98–369, sec. 91(a), 98 Stat. 494, 598. Section 461(h) is prospective only and was described in the legislative history in the following manner: "the rules relating to the time for accrual of a deduction by a taxpayer using the accrual method of accounting should be changed to take into account the time value of money." S. Prt. 98–169, at 266 (1984).[6] Accordingly, to the extent that as a matter of tax

---

[6] The majority points out that the legislative history concerning sec. 461(h) does not indicate that respondent did not have the authority to use time value analysis in an accrual tax accounting situation. But that is not to say that any basis in law or fact existed prior to the enactment of sec. 461(h) upon which respondent could have based the determination that petitioner's

policy the accrual method may be inappropriate to account for structured settlements, it has been prospectively remedied by the 1984 legislation.[7]

But for the addition of section 461(h) and the time value approaches in a limited number of other sections of the Internal Revenue Code,[8] courts have not heretofore held that respondent is empowered to employ time value principles in a clear reflection analysis. See *Follender v. Commissioner*, 89 T.C. 943 (1987); *Pritchett v. Commissioner*, T.C. Memo. 1989–21, affd. without published opinion 944 F.2d 909 (9th Cir. 1991), affd. without published opinion sub nom. *Buchbinder v. Commissioner*, 994 F.2d 908 (9th Cir. 1991); *Henkind v. Commissioner*, T.C. Memo. 1992–555. The parade of "horribles" described in the majority's examples are brought to light only through a time value or present value analysis.

*Matching of Income and Deductions*—The majority holds that petitioner's method of accounting for financial purposes results in a better matching of income and deductions than the method used for tax purposes. As rationale for this holding, the majority points out that for financial purposes, petitioner expenses only the cost of the annuity to fund its obligation or the present value of their obligation. "As * * * [the majority] [sees] it, the true economic costs of petitioner's losses to the tort claimants are the amounts it paid for the annuities." Majority op. p. 104.

The majority's holding and analysis does not address the concept of matching.[9] Instead, time value concepts—"true economic cost" and petitioner's financial accounting method—are the focus of and rationale provided for the majority's holding.

_____

claimed accrual for tax purposes does not clearly reflect income.

[7] It should be noted that the regulations applicable to similar transactions occurring after the prospective effect of the 1984 Tax Act were issued in T.D. 8408, 1992–1 C.B. 155. Sec. 1.461–4 and, more specifically, sec. 1.461–4(g)(2), Income Tax Regs., explain and address the concept of economic performance (a time value concept) concerning structured settlements, but are not applicable to the transactions in this case because they occurred prior to the effective date. See sec. 1.461–4(g)(8), *Example (1)*, Income Tax Regs.

[8] See secs. 163(e), 483, 1232, 1272–1275, 7872.

[9] "Matching" is a term used to describe the accounting principle involving attempts to associate related deductions and income in the same accounting period. Matching, however, is a desired goal of financial accounting, but it has not been cast as an overriding rule of tax accounting. See *United States v. Hughes Properties, Inc.*, 476 U.S. at 603–604; *Eastman Kodak Co. v. United States*, 209 Ct. Cl. 365, 534 F.2d 252, 255–256 (1976); *RLC Industries Co. v. Commissioner*, 98 T.C. 457, 497 (1992).

In this regard, it is well established that financial and tax accounting may and do vary. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522 (1979). Although it may seem incongruous that a large numerical difference can exist between financial and tax accounting, such differences have long been recognized. Because petitioner was on the accrual method, it was entitled to accrue and deduct[10] the amount permitted under the regulation and the all events test. More importantly, although financial accounting standards may have permitted the use of time value or present value analysis under the accrual method, such was not the case for the use of accrual method for tax purposes as it had developed and was in effect for the 1980 tax year.

Again, the majority has not addressed the basic concepts underlying the accrual method. Those concepts do not focus upon actual payment or receipt, but rather upon the obligation to pay or the right to receive.[11] Other than their reliance on the lapse of time, the majority does not attempt to explain why income is not clearly reflected or at what point in the infinite possibilities of taxpayers' payment obligations the distortion may or could occur. The majority has not found any abuse or misapplication of the principles involved in petitioner's practice or methodology and, accordingly, petitioner's 1980 claim of $24,477,699 for structured settlements clearly reflects income for tax purposes.[12]

*Abuse of Discretion*—Here, randomly occurring human injury or death provoked controversy and the eventual settlement of claims. Settlements were reached between adversarial parties and were not contrived. Petitioner was not compelled or required to ignore the potential for a tax advantage

---

[10] If petitioner reported its income and deductions under the cash method of accounting, it would be limited to the actual payments it made, either cost of the annuities or the amount of the payments to the claimants if no annuity were purchased.

[11] It should be recognized that the accrual method works in a correlative manner with respect to deductions and income. Accordingly, some taxpayers are required to include in income amounts which they might not receive for an extended period of time in the same manner as petitioner may be entitled to deduct amounts which are not paid for an extended period. There is no forced or artificial manipulation here—instead, the limits of the accrual methodology are being tested. One could surmise that in enacting sec. 461(h), Congress recognized there is no inherent limit and no practical way to devise a bright line beyond which taxpayers would generally not be entitled to accrue an item for tax purposes.

[12] We are not in a position to decide which approach represents the best or most appropriate tax policy. Our opinion should be based upon the statutes, regulations, and case precedent. It should be noted that the majority's approach is statutorily mandated for settlements occurring after July 18, 1984.

because the claim being settled was founded in human pain and suffering. The time value analysis and related examples described in the majority opinion infer that iniquitous or sinister benefits inure to petitioner. There has been no finding here that petitioner, singly or in collusion with the claimants, caused or arranged these transactions merely or primarily to effectuate a tax benefit or that the transactions were without substance. Admittedly, petitioner here is aggressively pursuing an established tax accounting principle, but the transaction passes all of the traditional tests. This is a type of exploitation which Congress must address as it did in the 1984 Tax Act and is a policy matter beyond the fiat given to respondent in section 446 and beyond the authority of this Court to change.

Although broad statutory discretion is vested in the Commissioner, a taxpayer cannot be required to change from an accounting method that clearly reflects income because the Commissioner considers an alternate method to more clearly reflect income. *Molsen v. Commissioner*, 85 T.C. 485, 498 (1985); *Peninsula Steel Products & Equip. Co. v. Commissioner*, 78 T.C. 1029, 1045 (1982); *Fort Howard Paper Co. v. Commissioner*, 49 T.C. 275 (1967).[13] Similarly, if a taxpayer's method of accounting is specifically authorized by the Internal Revenue Code or the underlying regulations and has been applied on a consistent basis, respondent has not been allowed to arbitrarily require a change or reject the taxpayer's method. *RLC Industries Co. v. Commissioner*, 98 T.C. 457, 491–492 (1992); *Prabel v. Commissioner*, 91 T.C. 1101, 1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989); *Hallmark Cards, Inc. v. Commissioner*, 90 T.C. 26, 31 (1988).

In general, a method of accounting clearly reflects income when it results in accurately reported taxable income under a recognized method of accounting. *Wilkinson-Beane, Inc. v. Commissioner*, 420 F.2d 352, 354 (1st Cir. 1970), affg. T.C. Memo. 1969–79; *Caldwell v. Commissioner*, 202 F.2d 112, 115 (2d Cir. 1953), affg. a Memorandum Opinion of this Court; *Herberger v. Commissioner*, 195 F.2d 293 (9th Cir. 1952), affg. a Memorandum Opinion of this Court; *Rotolo v. Commissioner*, 88 T.C. 1500, 1513 (1987).

---

[13] See also *Applied Communications, Inc. v. Commissioner*, T.C. Memo. 1989–469.

Respondent has the authority under section 446(b) to curb abuse. However, as in *United States v. Hughes Properties, Inc., supra,* there is nothing in this record to indicate that petitioner set up the settlement agreements for tax avoidance purposes. Instead, petitioner minimized its tax liability while complying with the tax laws in force and effect during 1980. No authority existed for 1980 tax year to impose time value of money concepts in the reporting of transactions under the accrual method of accounting. Respondent's use of such concepts for transactions prior to 1984 is arbitrary.

Accordingly, I would hold that respondent's disallowance of petitioner's deduction was not adequately based in law and results in an abuse of discretion in this case.

SHIELDS and CHIECHI, *JJ.,* agree with this dissent.