T.C. Memo. 1997-311


UNITED STATES TAX COURT


TEBARCO MECHANICAL CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 153-95.                    Filed July 3, 1997.


<u>Matthew J. Howard</u>, for petitioner.

<u>Clinton M. Fried</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's Federal income tax for the taxable year ending

September 30, 1990, of $98,314, and an accuracy-related penalty under section 6662[1] of $24,851.

After concessions by the parties, the issues for decision are: (1) Whether respondent's determination that petitioner must account for inventories and use the accrual method of accounting (accrual method) was an abuse of discretion. We hold it was not. (2) Whether petitioner is liable for the section 6662 accuracy-related penalty for a substantial understatement of income tax for 1990. We hold it is not.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated into our findings by this reference. At the time the petition in this case was filed, petitioner's principal place of business was located in Alpharetta, Georgia. Petitioner is a corporation owned by a sole shareholder, Terrell Barden (Barden). Petitioner files its Federal income tax return using a fiscal year ending September 30.

At its inception in 1983, petitioner began using the cash method of accounting (cash method). Then, in 1987, petitioner began keeping its books and records on the accrual method.

---

[1] Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All dollar amounts are rounded to the nearest dollar.

Thereafter, Michael L. Powers (Powers), petitioner's accountant, would make annual or semi-annual adjusting entries to convert petitioner's books to the percentage of completion method for financial statement reporting, as required for bonding purposes, and to the cash method of accounting for income tax purposes.

Petitioner is a mechanical contractor that provides plumbing installation, heating, and air conditioning work for general contractors or job site owners (customers). Petitioner's typical jobs are for new commercial construction and its installation sites include churches, schools, and retail complexes. Petitioner's business is located in a 5,000-square foot building. Of that 5,000 square feet, 2,000 square feet comprise an office and the other 3,000 square feet comprise a warehouse. In the warehouse petitioner stored materials, such as large piping, duct work, plumbing materials, sheet metal, small hardware pieces, and materials left over from various job sites. On occasion, petitioner uses the warehouse to store materials that are eventually going to a job site. For the taxable year in issue, the value of the materials maintained at petitioner's warehouse was between $10,000 and $20,000.

Petitioner procures jobs through a bid process. The factors that went into estimating a bid price for a job included materials, supplies, equipment, subcontracts, and labor costs (total direct expenses). Prior to submitting a bid proposal, petitioner increases the total direct expense by either 10 or 20

percent to recover overhead expenses and to make a profit on the job. The bid price submitted to the general contractor is a lump-sum bid; the general contractor is not informed of the various costs making up the bid. If accepted, the proposal forms the basis of the contract between petitioner and the customer.

Once a contract is signed, petitioner orders materials required for a particular job, such as steel piping and heating, ventilation and air conditioning (HVAC) systems, on an as-needed basis from various vendors. Petitioner supplies the purchase order to the vendor, and the vendor looks to petitioner, not the customer, for payment. Generally, when petitioner purchases materials for a job, it has the items delivered directly from the vendor to the job site, unless the weather or other exigent circumstances require petitioner to ship the materials directly to its warehouse. For instance, petitioner had a contract where the schedule originally called for the materials to be delivered to a job site in February. Due to inclement weather the job did not progress as scheduled. Petitioner, however, had already ordered the materials for the job, so the general contractor asked petitioner to store the items at its warehouse. On another occasion, petitioner was working during the summer at a school, but the project could not be completed by the time the students returned in September. Under those circumstances, petitioner ordered the materials for the job and had the items shipped directly to its warehouse.

Petitioner works on several jobs at a time. Petitioner's contracts generally provide for progress billing on the 25th day of each month. In most cases, petitioner sends its customers a bill once a month until a job is complete. Petitioner's vendors allow 30 days for payment of any materials petitioner orders. Petitioner generally tries to ship any materials ordered for a particular job directly to the job site on or about the 20th day of each month, so that it is not responsible for paying vendor bills until the 20th of the following month.

Petitioner had $2,115,291 in gross receipts for the taxable year in issue. Petitioner's material costs[2] for the taxable year amounted to 33 percent of its gross receipts. Petitioner's cost of good sold (COGS) was $1,835,723.[3]

## OPINION

Issue 1. Whether It Was an Abuse of Respondent's Discretion To Require Petitioner To Change From the Cash Method of Accounting to an Accrual Method of Accounting

Respondent determined that the cash receipts and disbursements method of accounting used by petitioner for income tax purposes does not clearly reflect income. Specifically, respondent claims that petitioner must use inventories, and

---

[2]    On its tax return for the year in issue, petitioner reported material costs of $701,320.

[3]    On its tax return for the year in issue, petitioner included the following items in its COGS computation: Material purchases, labor, equipment, subcontractor payments, depreciation, payroll taxes, insurance, operating expenses and other miscellaneous expenditures.

therefore the accrual method of accounting, because petitioner derives a substantial portion of its income from the sale of merchandise, maintains work-in-process at yearend, maintains a physical inventory at its business premises, and uses the accrual method of accounting for its books and records.

Petitioner asserts that it has no inventory, because it never takes title in, or physical possession of, the materials it acquires for its jobs, and thus is not required to adopt an inventory method of accounting.  Petitioner further argues that even if we find that it does take title in the materials acquired, it does not have to adopt an inventory method of accounting because the sale of merchandise is not an income-producing factor in its business.  Finally, in reliance on Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781 (11th Cir. 1984), petitioner contends that even if the sale of merchandise is an income-producing factor, section 1.471-1, Income Tax Regs., does not apply because there are no substantial fluctuations in petitioner's inventory, nor does petitioner maintain a substantial amount of inventory at its warehouse.

The principal issue for decision is whether it was an abuse of respondent's discretion to require petitioner to change from the cash method, which petitioner uses for income tax reporting purposes, to an accrual method.  Subsumed in this issue is the question of whether petitioner should be required to use

inventories for tax purposes.  To resolve these issues, we consider sections 446 and 471 and the regulations thereunder.

Pursuant to section 446,[4] the Commissioner has broad powers to determine whether an accounting method used by a taxpayer clearly reflects income.  Commissioner v. Hansen, 360 U.S. 446, 467 (1959); Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 370 (1995).  Courts do not interfere with the Commissioner's determination under section 446 unless it is clearly unlawful. Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532 (1979); Cole v. Commissioner, 586 F.2d 747, 749 (9th Cir. 1978), affg. 64

---

[4]    Section 446 provides in pertinent part:

SEC. 446(a). General Rule.--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) Exceptions.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

(c) Permissible Methods.--Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting--

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

T.C. 1091 (1975); Ansley-Sheppard-Burgess Co. v. Commissioner, supra. However, the Commissioner cannot require a taxpayer to change from an accounting method which clearly reflects its income to an alternate method of accounting merely because the Commissioner considers the alternate method to more clearly reflect the taxpayer's income. Ansley-Sheppard-Burgess Co. v. Commissioner, supra at 371.

Whether an abuse of discretion has occurred is a question of fact. Ansley-Sheppard-Burgess Co. v. Commissioner, supra; Ford Motor Co. v. Commissioner, 102 T.C. 87, 91-92 (1994), affd. 71 F.3d 209 (6th Cir. 1995); see Cole v. Commissioner, supra at 749. The reviewing court's task is not to determine whether, in its own opinion, the taxpayer's method of accounting clearly reflects income, but to determine whether there is an adequate basis in law for the Commissioner's conclusion that it does not. Ansley-Sheppard-Burgess Co. v. Commissioner, supra at 371; Hospital Corp. of America v. Commissioner, T.C. Memo. 1996-105. Consequently, to prevail, a taxpayer must prove that the Commissioner's determination is arbitrary, capricious, or without sound basis in fact or law. Ansley-Sheppard-Burgess Co. v. Commissioner, supra; Ford Motor Co. v. Commissioner, supra at 92.

Pursuant to section 471,[5] a taxpayer that has inventories is required to use the accrual method of accounting. An exception to this rule exists, however, where a taxpayer can show that use of another method (here the cash method) would produce a substantial identity of results and that the Commissioner's determination requiring a change is an abuse of discretion. Ansley-Sheppard-Burgess Co. v. Commissioner, supra at 377; see also Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d at 791-793 (11th Cir. 1984).

By regulation, the Secretary has determined that inventories are necessary if the production, purchase, or sale of merchandise is an income-producing factor. Sec. 1.471-1, Income Tax Regs. Completing the statutory and regulatory scheme, section 1.446-1(c)(2)(i), Income Tax Regs., provides that a taxpayer that has inventory must also use the accrual method of accounting with regard to purchases and sales.

Although not specifically defined in the Internal Revenue Code or regulations, courts have found that the term "merchandise", as used in section 1.471-1, Income Tax Regs., is

_____

[5]    Sec. 471 provides in pertinent part:

> SEC. 471(a). General Rule.--Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

defined as an item acquired and held for sale.  Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352, 354-355 (1st Cir. 1970), affg. T.C. Memo. 1969-79; Galedrige Const., Inc. v. Commissioner, T.C. Memo. 1997-240; Honeywell Inc. v. Commissioner, T.C. Memo. 1992-453, affd. without published opinion 27 F.3d 571 (8th Cir. 1994).  Whether an item was acquired and held for sale is governed by the substance of the transaction and not its form. Galedrige v. Commissioner, supra; Honeywell Inc. v. Commissioner, supra.  Thus, in deciding whether the materials petitioner acquires to perform its installation contracts are merchandise, we examine the facts and circumstances of the case.  Wilkinson-Beane, Inc. v. Commissioner, supra; Galedrige v. Commissioner, supra; Thompson Elec., Inc. v. Commissioner, T.C. Memo. 1995-292; Honeywell Inc. v. Commissioner, supra; J.P. Sheahan Associates, Inc. v. Commissioner, T.C. Memo. 1992-239.

Material Purchases and Warehouse Items are Merchandise

Petitioner asserts that it was an abuse of respondent's discretion to place petitioner on an accrual method of accounting for income tax reporting purposes, because petitioner does not have merchandise held for sale in its business, and therefore it does not have to use inventories.  In support of this contention, petitioner argues that while the section 1.471-1, Income Tax Regs. does not define inventory, it imposes one critical requirement before a taxpayer is permitted to include an item of merchandise in inventory, that requirement being the vesting of

title.  Petitioner relies on the following language to support
its position that it does not have to include the materials it
acquires in inventory.  Section 1.471-1, Income Tax Regs.,
provides in pertinent part:

> Merchandise should be included in the inventory only if
> title thereto is vested in the taxpayer.  Accordingly, the
> seller should include in his inventory goods under contract
> for sale but not yet segregated and applied to the contract
> and goods out upon consignment, but should exclude from
> inventory goods sold, * * * title to which has passed to the
> purchaser.  A purchaser should include in inventory
> merchandise purchased, * * * title to which has passed to
> him, although such merchandise is in transit or for other
> reasons had not been reduced to physical possession, but
> should not include goods ordered for future delivery,
> transfer of title to which had not yet been effected.
> [Emphasis added].

Specifically, petitioner asserts that under Georgia law[6],
title to the job site materials remains in the vendor until
delivery, and at delivery vests in the job site owner.
Petitioner claims that in essence, it was a broker or agent for
its customers, in that it merely coordinated the purchase, sale,
and delivery of materials to the job site for a fee.  Thus,
petitioner contends that title passed directly from its vendors
to its customers at the point of shipment, here the job site.  To
support its position that as a broker, it is not required to

---

[6]   Ga. Code. Ann. sec. 11-2-401(2) (1994) provides in pertinent
part:

Unless otherwise explicitly agreed title passes to the buyer at
    the time and place at which the seller completes his
performance with reference to physical delivery of the goods
    * * *

maintain inventories, petitioner relies heavily on Simon v. Commissioner, 176 F.2d 230 (2d Cir. 1949) (buyer and seller of paper box-board maintained no inventory, and was not engaged in business of "merchandising" requiring use of accrual method in computing income for Federal income tax purposes), and stresses the fact that generally it does not take physical possession of any materials it orders. Petitioner further argues that its practices are consistent with industry customs in that other subcontractors never take title to assigned materials, which they provide to their customers for a particular job.

We find petitioner's argument without merit; not only does it lack factual support in the record, but it fails to provide a defense for petitioner's refusal to account for inventories. Petitioner argues in a circular fashion that pursuant to section 1.471-1, Income Tax Regs., it need not maintain inventories, because it never had merchandise held for sale as all materials it acquires are instantaneously applied to a contract, segregated, and sold. Under the facts discussed herein, however, petitioner, in any given transaction, acts as both the buyer pursuant to its contract with the vendor, and the seller pursuant to its contract with the general contractor. In relying on section 1.471-1, Income Tax Regs., and Ga. Code Ann. sec. 11-2-401, however, petitioner fails to address this critical fact. Moreover, we note that petitioner could have changed the nature of its position as one of "buyer" by describing in the contracts

with its customers exactly when, where, and to whom title to the materials was to pass.  See Miami Purchasing Service Corp. v. Commissioner, 76 T.C. 818, 830 (1981) (the taxpayer, when negotiating with customers over sales terms could have insisted on a clear contractual statement of where title was to pass). Had petitioner set out such terms pursuant to its contracts, and had it consistently acted in accordance with such contracts, "such provisions would have furnished clear evidence of the parties' intention and governed the passage of title". Epic Metals Corp. v. Commissioner, T.C. Memo. 1984-322, affd. without published opinion 770 F.2d 1069 (3d Cir. 1985).  However, based on the evidence submitted at trial, we find that petitioner's contracts do not by their terms prevent petitioner from taking title to the materials shipped directly to a job site from petitioner's vendors to its customers.

Moreover, petitioner's assertion that many of its material acquisitions are identified with specific customers' construction jobs, does not negate the fact that it purchases materials from vendors and then sells the ordered materials to its customers. J.P. Sheahan Associates v. Commissioner, T.C. Memo. 1992-239. More importantly, that title in the merchandise may not repose in petitioner for a long period of time does not negate the fact that petitioner acquires merchandise for sale in its business. We note that possession of title is a factor in determining when a sale occurs together with all surrounding circumstances.

Hallmark Cards, Inc. v. Commissioner, 90 T.C. 26 (1988). Furthermore, it is title, rather than physical possession that determines whether merchandise should be included in inventory. Epic Metals Corp. v. Commissioner, T.C. Memo. 1984-322; see also Hoffman v. Commissioner, T.C. Memo. 1989-154 (taxpayer's S corporation required to accrue income from sale of ski equipment, even though equipment had not yet been manufactured and it never took possession); Middlebrooks v. Commissioner, T.C. Memo. 1975-275 (magazines were considered inventory, even where publisher held title to them only briefly).

In Middlebrooks, we noted that, aside from consideration of the technical passage of title, the taxpayer exercised control and ownership rights over the magazines after they had been printed in that they were shipped in the taxpayer's name and at his own expense. Similar to the taxpayer in Middlebrooks, the petitioner in the instant case also has the benefits and burdens of ownership. Here, petitioner marks up the cost of the materials between 10 and 20 percent, acquires the materials in its name, and the vendors look to petitioner, not the general contractor or owner, for payment. Petitioner's argument is further weakened by its admission that it sometimes accepts delivery and retains possession of the merchandise it acquires.

Finally, we note that petitioner's reliance on Simon v. Commissioner, supra, is misplaced. The facts in Simon, are clearly distinguishable from the facts in the instant case. In

Simon, the Court of Appeals for the Second Circuit noted that one of the conclusive facts in finding the taxpayer did not maintain inventories was that the taxpayer had no stock or merchandise on hand and no warehouse or storeroom for merchandise. Simon v. Commissioner, supra at 232. Here, as discussed below, we find as fact that petitioner did indeed have stock on hand and a warehouse where it stored materials.

In addition to the above-described materials petitioner acquired in its business, respondent alleges that petitioner had a warehouse where it stored materials such as large piping, duct work, plumbing materials, sheet metal, small hardware pieces, and materials left over from various job sites. Petitioner admits that its office contains a large warehouse where it keeps materials such as scraps from old jobs, doors, and some duct work. Moreover, petitioner concedes that if it does maintain the "warehouse inventory" as alleged by respondent, "then there is no question that it will have title to it." Petitioner contends however, both at trial and on brief, that the warehouse space was shared by petitioner and two corporations run by the brothers of petitioner's president. At trial, Barden, petitioner's president, testified that his brother, Howell, who owned General Mechanical Corporation (General Mechanical), had shut down his company after being in business for 20 years. Barden claimed that all of the material from General Mechanical's shop was brought to petitioner's warehouse and stored there by Howell.

Barden also testified that his other brother, Tim, who runs Tebarco Door and Metal Services (Tebarco Door), stored his material in the warehouse as well.

At trial, Vicki Byers (Byers), a revenue agent, who conducted an onsite audit of petitioner's business testified that while touring the warehouse with Barden she and another agent discussed the approximate value of the inventory in petitioner's warehouse. Although Barden valued the inventory at somewhere between $10,000 and $20,000, he at no time indicated to Byers that some of the material belonged to his brothers. Given that petitioner was being audited, we believe that if the materials in the warehouse belonged to anyone other than petitioner, Barden would have informed the agent of that fact. Barden's failure to do so leads us to believe that the materials in the warehouse did indeed belong to petitioner. Furthermore, Barden's brothers were not called to testify regarding the inventory maintained in petitioner's warehouse, nor did petitioner call anyone who worked at either General Mechanical or Tebarco Door to corroborate the validity of Barden's testimony. We note that the absence of testimonial evidence may lead the finder of fact to infer that such evidence, if presented at trial, subject to respondent's cross-examination, would not have been favorable to petitioner. McKay v. Commissioner, 89 T.C. 1063, 1069 (1987), affd. 886 F.2d 1237 (9th Cir. 1989); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th

Cir. 1947).  This is especially true where, as here, the party failing to produce such evidence has the burden of proof.  Id. at 1165.

Moreover, numerous invoices found in petitioner's books and records clearly establish that petitioner stored materials in its warehouse, which it used to complete its work at various job sites.  At trial, petitioner objected on the grounds of hearsay to the inclusion in the record of numerous exhibits placed in the stipulation by respondent.  We received the exhibits subject to oral reservation.  The exhibits referred to and included in the stipulation were petitioner's business records produced pursuant to respondent's subpoena duces tecum.  On brief, petitioner withdrew its objections to all of the exhibits except the following: 72-BT, 73-BU, 84-CF, 85-CG, and 86-CH.

Petitioner contends that respondent is using hearsay statements from several of the exhibits to prove that petitioner maintains a warehouse full of materials, and that petitioner sold such materials from its warehouse to customers.  Petitioner admits that the stipulated exhibits, which are composed mostly of petitioner's purchase orders, are not inherently untrustworthy.  Rather, petitioner contends that they are merely untrustworthy when offered by respondent to prove matters that are collateral to the material information conveyed by the documents.  Furthermore, petitioner argues that its "control over the stipulated business records does not negate the hearsay that is

found therein, nor does it establish as fact respondent's interpretations of the hearsay statements."

The business record exception to the hearsay rule expressly authorizes the introduction of the exhibits into the record. Fed. R. Evid. 803(6).[7] The exhibits were all maintained in petitioner's files and were maintained in the ordinary course of business. The fact that notations, terms, and directives may be contained in the business records, which express certain acts, events, conditions, or opinions, does not per se render the records inadmissible.

Petitioner does not dispute the material facts contained within the invoices, but asserts that there are certain notations, terms, and directives found within some of the documents in issue, e.g., invoices which show that materials used by petitioner on a particular job either are being shipped to, or picked up from, "the shop." Petitioner argues that if the

---

[7]     Fed. R. Evid. 803 provides in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
    *     *     *     *     *     *     *
    (6). Records of regularly conducted activity.--A * * * record, * * * in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the * * * record * * *, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *

declarants of the statements had been able to testify as to the statements' meanings, it would be clear that they were taken out of context and that any reference to "the shop" was not a reference to petitioner's shop, but to the shop at the job site. Petitioner had the opportunity to present evidence or witnesses at trial to explain any ambiguity in the statements found in petitioner's business records.  Petitioner's failure to do so leads us to believe that the presentation of such evidence would have been unfavorable to petitioner.  McKay v. Commissioner, supra; Wichita Terminal Elevator Co. v. Commissioner, supra.

Based on the entire record, we find that petitioner's subcontracting installation transactions involved a sale of a service and merchandise.  The materials petitioner acquires and assigns to particular jobs, as well as the materials petitioner maintains in its warehouse are the merchandise sold in these transactions.

Sale of Merchandise Is an Income-Producing Factor

For merchandise to be classified as inventory under section 1.471-1, Income Tax Regs., it must also be an "income-producing factor". Whether merchandise is an income-producing factor depends on the facts and circumstances of the case. Thompson Elec., Inc. v. Commissioner, T.C. Memo. 1995-292; Wilkinson-Beane, Inc. v. Commissioner, T.C. Memo. 1969-79. If the cost of the merchandise is substantial compared to the taxpayer's receipts, the merchandise is an income-producing factor. Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d at 790 (11th Cir. 1984) (the cost of newsprint and ink constituted 17.6 percent of total cash receipts); Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d at 355 (for 1963 and 1965 respectively, the cost of caskets constituted 15.4 percent and 14.7 percent of cash basis receipts); Thompson Elec., Inc. v. Commissioner, supra (materials varied from 37 to 44 percent of its cash basis gross receipts).

In this case, the facts indicate that the materials acquired by petitioner and assigned to particular job sites, as well as materials kept at petitioner's warehouse, were sold to its customers as part of the subcontracting installation transaction. The price of such materials was one of six factors making up the price of the installation transaction; the other factors were equipment and supply cost, labor cost, subcontractor cost, and an overhead/profit allocation. Petitioner's materials amounted to

38 percent of its COGS for 1990. Since most of the components of petitioner's COGS are the same components that go into preparing its estimated direct expenses, a similar relationship would, and does, appear as direct expenses in petitioner's bid estimate. The direct expenses plus an overhead/profit allocation of 10 to 20 percent are included in petitioner's bid price. The cost of the materials acquired by petitioner bears a direct relationship to the price charged for the subcontracting installation transaction. In fact, the cost of the materials is the most significant factor used by petitioner in computing its bid. Thus, we find that the price charged for the subcontracting installation transaction was directly related to the cost of the material purchases. Wilkinson-Beane, Inc. v. Commissioner, T.C. Memo. 1969-79. That petitioner acquired the materials from a vendor only after it obtained a signed contract from a customer indicates that petitioner sold the materials as part of the subcontracting installation transaction. Cf. Honeywell Inc. v. Commissioner, T.C. Memo. 1992-453 (fee established before taxpayer knew the parts that would be used; thus, there was no direct relationship between the amount charged to maintain the computers and the cost of the parts).

Moreover, the cost of petitioner's material purchases for the taxable year in issue represented approximately 33 percent of its gross receipts. This amount clearly establishes that the materials were an income-producing factor for petitioner.

Knight-Ridder Newspapers, Inc. v. United States, supra (sale of newspapers was a material income-producing factor where the cost of raw materials for such newspapers was 17.6 percent of total revenues); Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d at 355 (for 1963 and 1965, the cost of caskets constituting 15.4 percent and 14.7 percent, respectively of the taxpayer's cash basis receipts was a substantial income-producing factor).

Since petitioner's materials are both merchandise and an income-producing factor, section 1.471-1, Income Tax Reg., is applicable. Respondent determined, pursuant to section 1.446-1(c)(2)(i), Income Tax Regs.,[8] that this conclusion requires petitioner to use the accrual method of accounting. Petitioner argues that section 1.446-1(c)(2)(ii), Income Tax Regs., allows respondent to authorize petitioner's use of the cash method,

---

[8]     Sec. 1.446-1(c)(2), Income Tax Regs., provides:

(2) Special rules. (i) In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph.

(ii) * * * The Commissioner may authorize a taxpayer to adopt or change to a method of accounting permitted by this chapter although the method is not specifically described in this part if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. Further, the Commissioner may authorize a taxpayer to continue the use of a method of accounting consistently used by the taxpayer, even though not specifically authorized by the regulations in this part, if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. * * *

notwithstanding a finding that petitioner has inventory, and that respondent's failure to authorize the use of the cash method is an abuse of discretion.

In general, where a taxpayer has been required to maintain inventories, it has been held that the taxpayer must use the accrual method of accounting in accordance with the mandate of section 1.446-1(c)(2)(i), Income Tax Regs. Herberger v. Commissioner, 195 F.2d 293, 295 (9th Cir. 1952). However, the courts have developed, in the context of accounting for inventory, a substantial-identity-of-results test for determining whether respondent abused his discretion in not affording the taxpayer the opportunity to continue to use the cash method of accounting under section 1.446-1(c)(2)(ii), Income Tax Regs. Asphalt Prods. Co. v. Commissioner, 796 F.2d 843, 849 (6th Cir. 1986), affg. on this issue Akers v. Commissioner, T.C. Memo. 1984-208; Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d at 356; Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. at 377 (1995); Thompson Elec., Inc. v. Commissioner, T.C. Memo. 1995-292; J. P. Sheahan Associates, Inc. v. Commissioner, T.C. Memo. 1992-239; Surtronics, Inc. v. Commissioner, T.C. Memo. 1985-277. Whether the result under the cash method is substantially identical with that under the accrual method is a question of fact. E.g., Asphalt Prods. Co. v. Commissioner, supra; Wilkinson-Beane, Inc. v. Commissioner, supra; Thompson Elec., Inc. v. Commissioner, supra.

In <u>Asphalt Prods. Co. v. Commissioner</u>, <u>supra</u> at 849, the court noted that an insignificant increase in inventories may be grounds for finding an abuse of discretion by the Commissioner. However, the court found no such abuse of discretion in that case given the size of the taxpayer's receivables combined with its failure to account for inventories. <u>Id.</u> See also <u>Thompson Elec., Inc. v. Commissioner</u>, <u>supra</u> (cash method did not produce substantial identity of results where for 1988 and 1989, petitioner's taxable income computed under the cash method was $138,418 and $135,958, respectively, while taxable income computed under the accrual method was $331,925 and $289,039, respectively); <u>Surtronics, Inc. v. Commissioner</u>, <u>supra</u> (cash method did not produce substantially identical results to the accrual method, where the difference in net income for the period involved was $198,000).

For fiscal year 1990, petitioner's taxable income under the cash method of accounting was $54,128. Petitioner's taxable income under the accrual method of accounting would be $328,549. Thus, petitioner's taxable income under the accrual method increased by $274,421 for the taxable year in issue. This difference is not inconsequential; the two methods do not produce substantially identical results. <u>Thompson Elec., Inc. v. Commissioner</u>, <u>supra</u>; <u>J. P. Sheahan Associates, Inc. v. Commissioner</u>, <u>supra</u>.

The same result obtains if we examine the differences in gross receipts computed under the accrual method and the cash method. For fiscal year 1990 petitioner's gross receipts under the cash method of accounting were $2,115,291. Petitioner's gross receipts under the accrual method of accounting would be $2,465,060. Thus, petitioner's gross receipts under the accrual method increased by $349,769. Petitioner's use of the cash method does not produce results that are substantially identical to the computation of either taxable income or gross receipts under the accrual method. Thus, we hold that respondent did not commit an abuse of discretion in precluding petitioner from continuing to use the cash method of accounting for income tax reporting purposes.[9]

_____

[9] Petitioner, in reliance on Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781 (11th Cir. 1984), asserts that it is not required to use the accrual method, because it does not maintain inventory at its warehouse. In Knight-Ridder, the Court of Appeals for the Eleventh Circuit stated that "if either the absolute level of the inventory account or its fluctuation during the year would be substantial, then the taxpayer must use inventories if it meets the other requirements of sec. 1.471-1, [Income Tax Regs]." Id. at 791 In addition to the $701,320 cost of petitioner's material purchases during the year in issue, petitioner maintained a warehouse with materials valued somewhere between $10,000 to $20,000. We find that such inventory is substantial in comparison to petitioner's reported taxable income of $54,128. We note, that petitioner's books and records were insufficient to establish whether there was a substantial fluctuation in its inventory account during the year in issue, however, because we have found that petitioner maintains substantial inventory at its warehouse we need not address the fluctuation issue.

We have concluded that the materials petitioner purchased and the materials maintained at its warehouse were merchandise that were an income-producing factor and that petitioner is required to use inventories. Sec. 1.471-1, Income Tax Regs. Furthermore, we have found that respondent did not commit an abuse of discretion in not allowing petitioner to continue to use the cash method of accounting. Sec. 1.446-1(c)(2)(i), Income Tax Regs. Thus, we must now decide whether petitioner is liable for the section 6662 accuracy-related penalty for a substantial understatement of income for 1990.

Issue 2. Whether Petitioner Is Liable for the Section 6662 Accuracy-Related Penalty

Respondent determined that petitioner was liable for an accuracy-related penalty pursuant to section 6662 for fiscal year 1990. Respondent asserts that the section 6662(a) penalty for 1990 is due to a substantial understatement of tax. Petitioner asserts that it is not liable for the section 6662 penalty because it relied on its accountant in using the cash method of accounting.

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to one or more of the items set forth in subsection (b). The accuracy-related penalty does not apply with respect to any portion of the underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in

good faith with respect to such portion.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess its proper tax liability for the year.  Id.

Petitioner contends that the accuracy-related penalty is inappropriate in this case, because it relied on its certified public accountant, Michael Powers, to prepare its tax return accurately.  Generally, the duty of filing accurate returns cannot be avoided by placing the responsibility on a tax return preparer.  Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).  However, reliance on a qualified adviser may demonstrate reasonable cause and good faith if the evidence shows that the taxpayer relied on a competent tax adviser and provided the adviser with all necessary and relevant information.  Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Daugherty v. Commissioner, 78 T.C. 623, 641 (1982); Magill v. Commissioner, 70 T.C. 465, 479 (1978), affd. 651 F.2d 1233 (6th Cir. 1981); Pessin v. Commissioner, 59 T.C. 473, 489 (1972).

At trial, Powers testified that he had prepared petitioner's tax returns from the time of its inception in 1983, and that subcontractors similar to petitioner comprised approximately 50

percent of his clientele. Powers spent 8 to 12 days a year actually at petitioner's place of business. As petitioner's accountant, Powers' duties involved preparing semi-annual financial statements and annual tax returns for petitioner, hiring and training petitioner's accounting personnel, and solving any accounting problems that petitioner may incur throughout the year. Powers claimed that to his understanding, a mechanical contractor is a service provider. Moreover, Powers testified that petitioner did not have inventory, because it acted merely as an agent when it ordered materials pursuant to a particular contract.

There is nothing in the record to indicate that petitioner withheld any relevant information from Powers. We note that Powers testified that he did not take a physical inventory of petitioner's warehouse. That fact alone, however, does not establish that petitioner failed to provide Powers with all the necessary and relevant information he needed to prepare petitioner's tax returns. Powers spent time at petitioner's offices, he actually viewed petitioner's warehouse, and he admitted that it was ultimately his decision, and not petitioner's, to define what inventory is.

Thus, given the facts discussed herein we find that petitioner relied in good faith on the advice of its accountant in filing its returns on the cash method. Accordingly, we hold

that petitioner is not liable for the accuracy-related penalty under section 6662(a) for the fiscal year 1990.

To reflect the foregoing,

> <u>Decision will be entered</u>
> <u>for respondent as to the</u>
> <u>deficiency, and for petitioner as</u>
> <u>to the accuracy-related penalty</u>.